THE BOARD OF REGENTS OF THE KANSAS STATE AGRI-
CULTURAL COLLEGE v. B. F. MUDGE.

1. REGENTS OF AGRICULTURAL COLLEGE; *Employment of Teachers; Salary.*
The regents of the Kansas State Agricultural College have the power to
make a valid contract for the employment of a professor or teacher for
the period of three months; and although such contract or employment
would not prevent the regents from discharging such professor or
teacher prior to the expiration of such three months, yet if they should
do so without any sufficient cause, they would not relieve their board
from paying such professor or teacher the full amount of the compensa-
tion agreed upon for the three months.

2. REGENTS; *When Liable for Salary.* The regents may also make a valid
contract, "that each professor shall give and receive three months' no-
tice of resignation or discharge, except in case of gross misconduct;"
and where the regents make such a contract with a professor, and then
discharge him without sufficient cause, and without giving him any
previous notice, the board will be liable for his compensation for the
next three months after his discharge.

3. FACTS, *Showing Implied Contract.* Where the board of regents passed a
resolution tendering to M. a professorship, and afterward passed another
resolution requiring "that each professor shall give and receive three
months' notice of resignation or discharge, except in case of gross mis-
conduct," and M., having knowledge of these resolutions, entered upon
the discharge of the duties of his said professorship, *held,* that in the
absence of any express contract, these facts are sufficient to authorize
a finding by the court and jury of an implied contract between the
regents and M.; that M. should receive three months' notice before he
should be discharged, except in case of gross misconduct.

*Error from Riley District Court.*

ACTION, brought by *Mudge* against *The Board of Regents
of the Kansas State Agricultural College.* Trial at September
Term, 1877, of the district court, and verdict and judgment
for *Mudge,* plaintiff. New trial refused, and the defendant
brings the case here on error. The facts are sufficiently
stated in the opinion.

*Green & Hessin,* for plaintiff in error:

1. The plaintiff below was subject to any resolution the
board of regents might pass terminating the relation between

the parties, whenever, in the opinion of the board, the interest of the college required the passage of such a resolution. The legislature has vested the government of this college in the plaintiff in error, and made it and no other tribunal the judge of what is for the interest of the institution; and the relation existing between the plaintiff and defendant does not result from any contract made and entered into by them, but from the laws existing at the time for the government of the Agricultural College—creating professorships, fixing, increasing and diminishing the regular number of professors and teachers, and providing for the removal of the president and any professor or teacher whenever the interest of the college required it. (*Head v. The University*, 19 Wall. 526.)

2. The judgment in this case must, we claim, be reversed for the admission of the resolution, "That each professor shall give and receive three months' notice of resignation or discharge, except in case of gross misconduct." This resolution was passed September 4th, 1873, and Professor Mudge was employed July 16th, 1873. The objection was, that the evidence was incompetent, and that the board of regents had no authority to pass such a resolution under the statutes of 1868, p. 75, § 4, entitled "An act for the government of the Kansas State Agricultural College."

This evidence was incompetent, for the reason that there is not one scintilla of evidence offered on the part of the plaintiff below to show that Professor Mudge ever accepted the terms of this resolution, and agreed to comply with the conditions therein expressed.

The board of regents, as the representative of the state, had no authority to pass said resolution. Section 4 of chapter 3, for the government of the Kansas State Agricultural College, is as follows:

"The regents shall have power to enact ordinances, by-laws and regulations for the government of said college; to elect a president; to fix, increase and diminish the regular number of professors and teachers, and to appoint the same and determine the amount of their salaries. They shall have

power to remove the president and any professor or teacher, whenever the interest of the college shall require."

The resolution quoted above is in direct conflict with the latter part of this section, and is an attempt to abridge the power therein expressly given by the legislature to the regents of the college. The board of regents is the creature of the act for the government of the college, dependent upon said act for all its powers, and controlled by all the restrictions which the act imposes. This act gives the board the power to remove any professor or teacher whenever the interest of the college requires, not by giving three months' notice of such intention, but whenever the authorities governing the college deem it for the interest of the institution so to do.

The general principles defining the extent and mode of exercise of corporate powers are well settled. Corporations have only such powers as are specially given by their charters. (9 Mo. 507; 10 id. 559; 43 id. 353.)

It is well settled that the by-laws of a corporation must be in harmony with the general law of the state and with the provisions of its charter, and whenever they come in conflict with either, the by-law must give way. (14 Barb. 428; 4 Hill, 209; 21 Ill. 205; 23 Conn. 128; 9 Mo. 191; 27 Penn. St. 339; 18 Iowa, 59.)

*McClure & Humphrey*, for defendant in error:

1. Did the establishment of the regulation referred to transcend the power confided to this board? Section 4 of an act for the government of the Agricultural College, page 75 of the general statutes, defines the powers of this body. It will be observed that this section vests in the board of regents extensive powers to establish all necessary regulations, rules and provisions for the government of the institution; to appoint the president, professors and teachers; to fix the number to be employed; to determine the amount of their salaries; and to remove them whenever the interest of the college shall require. The mode and character of government for the col-

15 — 21 KAS.

lege is left to the discretion of the board.   The manner of appointing and removal of the president, professors and teachers is also to be determined by the same body, and for this purpose they have the power to enact ordinances, by-laws and regulations.   Certain powers are granted to the board of regents, such as are necessary to the institution and maintenance of orderly government for the college, and the conduct and regulation of its various affairs and interests, but the particular mode and manner in which those powers shall be exercised is not prescribed by the law, but left to the determination of the board.   The power of removal of the president, and any professor or teacher, is conferred; but whether such removal be summary, or at the lapse of any specified time after notice, except for specified causes, is wisely left to the judgment of the board of regents.

The ground upon which the counsel for plaintiff place the theory of the non-liability of plaintiff to defendant, under the resolution recited, seems to be stated thus: "The state owns, controls and governs the institution, and is not under any obligations of contract with any one."

This proposition is true only provided the state and board of regents are one and the same body, for we have already seen that the institution is controlled, not by the state, but by the regents, by virtue of powers conferred by the state.   It involves the further supposition that the state, and also the board of regents, are incapable of entering into contract relations, or being bound thereby.

2. Was this proposition, concerning the notice to be given and received, assented to by Prof. Mudge?   Prof. Mudge testifies: "I was notified of the resolution of notice about the time of its passage.   The president mentioned the notice in the faculty meeting, just as we were breaking up."   The president officially communicated to the members of the faculty, Prof. Mudge included, the resolution of the board of regents, which directly affected each member.   It was not necessary, under the circumstances, that any member of the faculty should signify a formal acceptance of the terms of the

resolution; he could not remain silent, and afterward deny his assent, and no court would permit him to do it.

From the presence of a party cognizant of the matter, and not objecting, consent may be inferred. *Slocumb v. Lurty* (Hempst.) 431; 1 Iowa, 3.

There was no question raised but that both parties understood that the terms of the resolution were accepted by all parties, until it was raised in court upon a supposed insufficiency of proof of the fact. Both parties acted in accordance with such an understanding, which is itself sufficient proof of assent.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by B. F. Mudge against the board of regents of the Kansas State Agricultural College. The facts of the case are substantially as follows: On July 16, 1873, the board of regents adopted the following resolutions, to wit:

"*Resolved*, That Prof. Mudge be tendered the chair of geology and related sciences, at a salary of $1600 per annum."

"*Resolved*, That Prof. Mudge be allowed house rent free, in consideration of the extra services which he renders the college."

On September 4, 1873, said board adopted the following resolution, to wit:

"*Resolved*, That each professor shall give and receive three months' notice of resignation or discharge, except in case of gross misconduct."

At the beginning of the next school year, commencing in September, 1873, and in fact on the 11th day of said September, though the exact day is not very definitely shown, Prof. Mudge commenced to perform services as professor of geology and associated sciences for said Agricultural College. At this time, and prior thereto for more than seven years, Prof. Mudge was and had been in the employment of the said Agricultural College, but in what capacity he was so employed is not shown. From this time until February 6th, 1874, he performed the duties of said professorship of geology

and kindred sciences. February 6th, 1874, he was discharged by the board of regents from his said professorship, avowedly for gross misconduct, although in fact, as was substantially found by the court below, he was not guilty of any such misconduct. For three months after the discharge Prof. Mudge was out of employment, although he endeavored to obtain employment. No written contract was ever executed between said regents and Prof. Mudge, and no formal oral contract was ever entered into between them. After the regents tendered to Prof. Mudge "the chair of geology and related sciences," he orally accepted the same, but when he accepted the same is not shown. It was not earlier, however, than August, 1873, and may have been later. The regents paid Prof. Mudge for his services up to the time when they discharged him, but did not pay him for any time afterward. Prof. Mudge then sued them for compensation for the three months next succeeding his dismissal. He recovered in the court below, and obtained a judgment for $493.33. The board of regents now, as plaintiff in error, seek to have this judgment reversed by petition in error in this court. They raise two principal questions in this court: 1st, They claim that their said resolution of September 4th, 1873, was and is void; 2d, But if it is not void, then they claim that it has no application to the employment or services of Prof. Mudge. Some other questions are suggested by briefs of counsel, but they are not of sufficient importance to require any separate consideration. We think we must decide both of the principal questions against the plaintiff in error.

I. The act relating to the Agricultural College (Gen. Stat. 75) provides, among other things, as follows:

"SEC. 2. The government of such college is vested in a board of regents," etc.

"SEC. 3. The board of regents shall constitute a body corporate, with the right as such to sue and be sued, to use a common seal, and to alter the same at pleasure."

"SEC. 4. The regents shall have power to enact ordinances, by-laws and regulations for the government of said college; to elect a president; to fix, increase and diminish the regular

number of professors and teachers; and to appoint the same, and to determine the amount of their salaries. They shall have power to remove the president and any professor or teacher, whenever the interest of the college shall require."

"Sec. 12. The board of regents shall have the general supervision of the college, and the direction and control of all expenditures."

It will be seen from the foregoing sections of the statute, that the power reposed in the board of regents is very extensive. They are a corporation having the entire control of all departments of the college—educational, financial and administrative. They have the power to appoint and discharge the president and all the professors and teachers, and to fix and increase or diminish their several salaries. But with all these powers, they are not supreme, nor irresponsible. They may "sue and be sued," just as the managing officers of other public corporations, such as cities, towns, counties, townships and school districts, may.

While their powers are extensive, still they may render their board liable by the wrongful exercise of such power. Thus they have the unquestioned and the continuing power of employing a president and professors and teachers whenever they may choose, and of discharging any of them whenever they may choose; but if they agree to employ a president or professor or teacher for a period of three months, and then wrongfully discharge him before the three months have elapsed, they will leave their board responsible for the whole amount of the salary for such three months, notwithstanding such discharge. While the legislature unquestionably intended to confer upon the board of regents extensive powers, yet it did not intend to confer upon them the irresponsible power of trifling with other men's rights with impunity; and making the regents responsible for their acts, does not in the least abridge their powers. It only tends to make them more cautious and circumspect in the exercise of their powers. But the plaintiff in error claims in substance that the board has no legal power to make a contract to employ a president or a professor or a teacher for any particular period of time—not

even for a day or an hour—and therefore, that an agreement to employ a president or a professor or a teacher for three months, or for any other definite period of time, would be an absolute nullity. Now we cannot think that this is correct. There is no express limitation upon the power of the board to make a contract to employ a president or a professor or a teacher for any period of time, and we know of no implied limitation that would prevent the board from employing, or agreeing to employ, a president or a professor or a teacher for three months, or for even a longer period of time, provided it were not unreasonably long. We would think that the board has the power to make a valid contract, in advance, to employ a president or a professor or teacher for some short but definite time—say three months—and especially so, where the board reserves the right to discharge such president, professor or teacher at any time for misconduct. It would certainly be for the interest of the college that the board should have such power. No man of spirit, of self-respect, and of capability, would want to hold an office or position at the whim or caprice of a body of men with whom he might have but little if any personal acquaintance. No man of spirit, of self-respect, and of capability, would accept an office unless he felt that he was reasonably certain to hold the same for some reasonable period of time. The shorter and more precarious the tenure of the office, the less attractive, important and valuable it would be; and generally, men of only inferior talent could be found to accept it or to perform its functions with such a precarious tenure, and even then a higher rate of compensation would be required than where the tenure is more stable and certain. In the present case, the contract may be considered as a continuing contract with each professor for his services for the next three succeeding months. That is, the services of each professor are continually contracted for, for three months in advance, until after he gives or receives notice that his services are to be terminated at the expiration of such three months; and his employment will still continue for three months after such

notice is given. Now we know of no sufficient reason why such a contract should not be valid. We think it is eminently reasonable, and for the best interests of the college.

II. But the plaintiff in error claims, that even if the board of regents had the power to pass said resolution of September 4, 1873, still, that the facts of this case do not constitute a contract under the resolution. We think they do. The board passed a resolution tendering said professorship to Professor Mudge. The board passed another resolution, "that each professor shall give and receive three months' notice of resignation or discharge, except in case of gross misconduct." Prof. Mudge had knowledge of these resolutions, and having such knowledge, entered upon the discharge of the duties of his professorship. Now, we think that these facts are sufficient to constitute a contract between the regents and Prof. Mudge, that he should receive three months' notice before he should be discharged, except in case of gross misconduct; or rather, these facts (in the absence of any express contract) are sufficient to authorize a finding of an implied contract to that effect. The question was fairly submitted to the jury, under proper instructions. The court also instructed the jury, that if Prof. Mudge was guilty of gross misconduct, and was discharged for that reason, he could not recover, and the jury found in his favor.

The judgment of the court below will be affirmed.

All the Justices concurring.