WEST SHORE LUMBER COMPANY, Respondent, vs. NORTHROP, Appellant.

*November 25 — December 15, 1896.*

*Principal and agent: Authority to purchase lumber: Evidence: Findings.*

In an action to enforce a lien for lumber used in the construction of a house on defendant's land by a contractor who performed the work under a written contract in which certain payments to materialmen were provided for, the evidence showed, among other things, that the defendant or her father before making the contract procured the plaintiff estimates of the cost of the lumber, and that the contractor when he ordered the lumber told the plaintiff's manager "exactly what the contract was" and that the defendant "was to pay the bill, or to that effect, and it might just as well be charged to her" as to him, which was done. There was no pretense that the defendant ordered the lumber, and no evidence that her father or the contractor had authority from her to buy it. *Held*, that a finding of the trial court that the defendant ordered or promised to pay for the lumber or any part thereof, otherwise than as specified in the written contract, was against the clear preponderance of the evidence.

West Shore Lumber Co. vs. Northrop.

APPEAL from a judgment of the superior court for Racine county: FRANK M. FISH, Circuit Judge. *Reversed.*

The case is stated in the opinion.

For the appellant there was a brief by *Thomas M. Kearney,* and oral argument by *Mr. Kearney* and *Mr. Park Phipps.*

For the respondent there was a brief by *Cooper, Simmons, Nelson & Walker,* and oral argument by *J. B. Simmons.*

CASSODAY, C. J. The defendant, *Mrs. Northrop,* was at all times mentioned the owner of the lands described. In the early spring of 1894 she determined to erect thereon a dwelling house, and this action was brought to enforce a lien for lumber furnished by the plaintiff, and which went into the building, against *Mrs. Northrop* as the principal contractor. The answer denied making any such contract, and all liability. It appears from the record that in March or the early part of April, 1894, the defendant applied to one S. S. Carr, an architect and builder in Racine, to make plans and specifications for such building; that, after the plans and specifications were completed, the defendant received estimates of the lumber required from the plaintiff, and also from Kelley, Weeckes & Co.; that the plaintiff's original estimate was $743; that thereupon the defendant received bids from four different parties, including said Carr, for the construction of the building; that those bids were each and all higher than *Mrs. Northrop* was willing to pay; that thereupon changes were made in said estimates, the plaintiff's being reduced to $692.10, and thereupon new bids were received by the defendant from the different contractors, including Carr, and the result was that she accepted Carr's bid to erect and construct the building for $4,075, he furnishing all the materials, and thereupon Carr drew up a written contract between himself and the defendant, and delivered it to her; that before that contract was signed,

and on or about April 19, 1894, Carr ordered the lumber from the plaintiff, and commenced the construction of the building; that the contract so written by Carr was signed by him and *Mrs. Northrop* May 5, 1894, and was to the effect that Carr agreed to build the house for *Mrs. Northrop*, as per specifications thereunto attached, and to have the same completed by September 1, 1894, and she therein agreed to pay Carr therefor $4,075, as follows, to wit: Enough from time to time to pay the carpenters' help; when the house was inclosed, the sum of $1,350, to be paid as follows: $400 to Jacobson & Sorenson, $400 to *West Shore Lumber Company* (the plaintiff), $400 to Moody & Meckleberg, $100 to Hullett & Hay, and $50 to Murphy & Kersten; and that, when the house should be completed, the balance to be paid, first, by paying all outstanding bills against said house for materials and lumber; then what is remaining should be paid to said Carr. The court found, in effect, the facts stated, and that April 19, 1894, Carr ordered from the plaintiff the identical bill of lumber agreed upon between the plaintiff and the defendant, with directions that such lumber was to be charged to *Mrs. Northrop;* that afterwards the defendant ordered and caused to be made certain changes in the plan of the house, which necessitated considerable additional lumber and other building materials, and consequently the plaintiff, at defendant's request, furnished and delivered to her additional lumber and building materials, required to build the dwelling house and to make the changes therein, and which additional lumber and building materials were reasonably worth $238.97; that all of such lumber and building material was delivered by the plaintiff upon the faith and credit of the defendant, and of her separate estate, and was charged to her upon its books at the time of delivery; that, June 23, 1894, the defendant paid the plaintiff the $400 mentioned in the contract; that the plaintiff had duly filed its claim and petition for a lien. As conclu-

sions of law the court found, in effect, that there was due from the defendant to the plaintiff $531.07, with interest thereon from January 1, 1895; that the plaintiff was entitled to a personal judgment for the amount, with costs, against the defendant, but was not entitled to a lien therefor, and ordered judgment accordingly. From the judgment entered thereon accordingly, the defendant brings this appeal.

The mere fact that the defendant, or her father, or both together, requested the plaintiff's general manager to estimate the cost of the lumber to build the house according to the plans and specifications prepared by Carr, or the price for which the plaintiff would furnish such lumber, is no ground for holding that she purchased or ordered the lumber. She was simply following the ordinary course in such cases, in trying to ascertain, as near as she could, the cost of such building, before she determined whether she would build at all or not. She did not so determine until she accepted Mr. Carr's second bid. What took place between the plaintiff and the defendant and her father was all prior to such determination. There is no pretense that the defendant or her father actually ordered the lumber. On the contrary, it is admitted that the lumber was delivered on the order of Carr, who testified, in behalf of the plaintiff, that he "told Mr. Smith [the plaintiff's general manager] exactly what the contract was when" he "ordered the lumber;" that he "told Smith that the contract read that *Mrs. Northrop* was to pay the bill, or to that effect, and it might just as well be charged to her" as to him. In the contract she had agreed with Carr to pay the plaintiff $400 for him, and she did so. There is no evidence that Carr, or the defendant's father, had any authority from her to buy the lumber, or to make any contract in her behalf. From a careful examination of the record we are forced to the conclusion that the findings, to the effect that the defendant ordered or promised to pay for the lumber or any part thereof,

otherwise than specified in the written contract, is contrary to the clear preponderance of the evidence.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the complaint.