## WARD v. BOARD OF REGENTS OF KANSAS STATE AGRICULTURAL COLLEGE.

(Circuit Court of Appeals, Eighth Circuit. May 23, 1905.)

### No. 2,047.

1. CORPORATIONS—KANSAS AGRICULTURAL COLLEGE—LIABILITY TO BE SUED.

Under a statute creating the Kansas Agricultural College, and vesting the government in a board of regents, which was constituted a body corporate with the right as such to sue and be sued, and to use a common seal, the board was subject to suit for breach of contract, though no legislative appropriation of funds had been made to meet the claim on which the action was based, the board being entitled to satisfy a judgment against it, if rendered out of any funds not otherwise specifically appropriated.

2. SAME—TEACHER'S CONTRACT—TIME—REASONABLENESS.

The statute incorporating the board of regents of the Kansas Agricultural College having authorized it to fix, increase, and diminish the regular number of professors, to appoint the same, and diminish their salaries, without limitation as to time, a contract employing a professor for two and one-half years was not void as made for an unreasonable period, though the personnel of the board was changed from year to year.

3. SAME—DISCHARGE OF PROFESSORS—BREACH OF CONTRACT—LIABILITY.

Where a statute incorporating the board of regents of the Kansas Agricultural College authorized such board to remove any professor whenever the interests of the college required, such provision became a condition of a contract for the employment of a professor for a specified time; and hence, in the absence of fraud or bad faith, regents in discharging a professor before the termination of such contract were not liable in their corporate capacity for damages for a breach of such contract.

4. SAME—JUDICIAL INVESTIGATION.

Where the board of regents of an agricultural college were authorized by statute to remove professors employed whenever the interests of the

college should require, the ground on which a professor was removed prior to the expiration of the period covered by his contract of employment, in the absence of fraud or bad faith, was not a proper subject for judicial investigation.

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Kansas.

George E. Stoker, for plaintiff in error.

R. J. Brock, N. H. Loomis, R. W. Blair, and H. A. Scandrett, for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge. In the summer of 1898 the defendant employed the plaintiff as professor of English language and literature for the college year commencing September 1, 1898, and ending June 30, 1899, at a salary of $1,450 per year. At the time of his engagement plaintiff was a resident of New Hampshire. He immediately removed to Kansas with his family, and entered upon the duties of his professorship, and continued to discharge the same until the end of the contract. On the 1st of April, 1899, a change was to occur in the board of regents of the college by the retirement of three of its members through the expiration of their term and the appointment of others in their stead. Fourteen days before this change occurred, namely, March 18, 1899, and while plaintiff's original employment still had several months to run, the board entered into a new contract with him, in writing, whereby he was employed in the same professorship from that date for nearly two and a half years—that is, until the close of the school year ending June 30, 1901—at a salary of $1,450 per annum, payable in equal monthly installments. On June 10, 1899, after the new members had been admitted, the board, by resolution, revoked and canceled said contract, specifying that the best interests of the college required such action. Having waited for the expiration of the term of his employment, the plaintiff brings this suit to recover damages which he claims to have suffered by reason of the violation of his contract, and for other damages which he claims to have suffered in his profession on account of the wrongful discharge. The defendant interposed a demurrer to this complaint upon the ground that it did not state facts sufficient to constitute a cause of action, which was sustained by the trial court. This ruling is the only matter brought under review by the present writ of error.

The action of the trial court is justified upon three grounds: (1) It is contended that because the board of regents is simply a governing body, without property or the power of taxation, and receives all its funds by legislative appropriation, it cannot be sued unless a fund has been placed in its hands to meet the claim upon which the action is based (which is not alleged in the present complaint), and that in the absence of such a fund the plaintiff's only legal redress is by petition to the state Legislature. (2) That the

contract with the plaintiff was for an unreasonable period, and therefore void. (3) If the contract was valid, still the statute which grants to the board of regents the right to "remove any professor or teacher whenever the interests of the college shall require" vests in the board an absolute right to make such removal, and no action can grow out of the exercise of that right.

The statute of Kansas establishing the Agricultural College vests the government of that institution in a board of regents, which by the act is constituted a body corporate, with the right, as such, to sue and be sued and to use a common seal. It is given power, among other things, "to elect a president; to fix, increase, and diminish the regular number of professors and teachers; and to appoint the same and determine the amount of their salaries. They shall have power to remove the president and any professor or teacher whenever the interests of the college shall require."

The first contention of defendant finds its complete answer in this statute. The board is given full control of the Agricultural College. It may enter into contracts not only for the employment of the faculty, but also for maintaining the institution and for erecting such buildings as may be necessary from time to time. It is expressly given the power to sue and be sued in respect of any of these matters. When a judgment is recovered against the board, it may lawfully apply to its discharge any funds in its hands not otherwise specifically appropriated, and, in case no fund exists for the purpose, it will be presumed that the Legislature will discharge its duty by providing a fund to meet any liability of the board that is thus judicially established.

No sound reason is advanced to support the contention that the contract was void because for an unreasonable period. The statute establishing the board imposes no limit upon the term for which the various members of the college faculty may be employed. Such an occasion calls for the exercise of a sound discretion rather than the application of any hard and fast rule. What would be a reasonable term in one case would be unreasonable in another. An engagement such as is usual in other like educational institutions would be necessary in order to obtain the services of competent and self-respecting scholars. Such a contract, though subject to revocation, affords a professor a moral right, which is the only tenure that can be of practical benefit in such a relationship. These considerations have received the express approval of the Supreme Court of Kansas in the case of Board of Regents v. Mudge, 21 Kan. 223. Though the statute imposes no express limitation, it is sought to raise a limitation by implication from the fact that the membership of the board of regents is changed from year to year by the retirement of a portion of its members and the appointment of others to fill the vacancy, and it is urged that the new board ought not to be hampered by the contracts of the old. This fact does not seem to us to justify such an implication. The weight of authority is clearly against such a holding. Caldwell v. School District No. 7 (C. C.) 55 Fed. 372; Gates v. School District, 53 Ark. 468, 14 S. W. 656, 10 L. R. A. 186; Reubelt v. Noblesville School Town, 106

Ind. 480, 7 N. E. 206; Tappan v. Carrollton School District, 44 Mich. 500, 7 N. W. 73. The Legislature has granted the power in unrestricted terms. It is the proper department to determine whether a sound public policy requires the power to be restricted or not. It would be an exceptional case indeed in which the courts would be justified in raising a limitation solely out of considerations of public policy when the Legislature has seen fit to grant an unlimited power. Furthermore, as many considerations of public policy can be brought forward to justify a grant of unlimited power as can be adduced in favor of the limitation for which defendant contends. Gates v. School District, 53 Ark. 468, 14 S. W. 656, 10 L. R. A. 186. There are decisions in Illinois which hold that in the case of teachers in the common schools the local boards have not authority to contract beyond the year for which they are elected. These decisions rest mainly upon peculiar statutory provisions. They also find support in the fact that the management of public schools has always been from term to term. The reason which would justify such a limitation in their case has no application to a great educational institution like the Agricultural College of Kansas, whose administration should be controlled by a permanent and settled policy.

The principal question presented by this writ of error is whether the present case is ruled by the decision of the Supreme Court of Kansas in Board of Regents v. Mudge, 21 Kan. 223, above referred to. The defendant there was the same as in the present case. The statute fixing the powers and duties of the board of regents then was the same as now. Prof. Mudge was employed as professor of geology and related sciences, but no formal contract was entered into. His salary, however, was fixed at $1,600 per annum, and the professor was given a house, rent free. From these facts and the nature of the service an implied contract would be raised that the employment was for a term of one year. Kellogg v. Citizens' Insurance Co., 94 Wis. 558, 69 N. W. 362. No doubt can exist that unless the statute authorized the board to discharge the professor during the term of the contract he would have been entitled to recover the full year's salary in case no facts existed justifying the discharge. He, however, did not sue upon the contract. The board of regents, pursuant to a power vested in it to enact ordinances, by-laws, and regulations for the government of the college, had passed a resolution "that each professor should give and receive three months' notice of resignation or discharge, except in case of gross misconduct." This resolution was in force when Prof. Mudge was employed and discharged. He was discharged without notice and upon the avowed ground of gross misconduct. Now, the matter of primary importance to be noticed is that Prof. Mudge did not sue upon his contract of employment to recover his salary for the unexpired portion of the year, but based his action upon the resolution, and asked to recover only for the three-months period therein mentioned. The Mudge Case can be explained upon the ground that the statute giving the power to remove a professor whenever the interests of the college require is not incompatible

with a regulation made pursuant to another section of the same statute, that a professor should be entitled to three months' notice of removal except in case of gross misconduct. It was decided by the court that, while such a regulation was in force, a discharge without notice, in the absence of misconduct, would render the board liable for the professor's salary for the period covered by the regulation. That was the only question before the court, and the language of the opinion must be confined to that question.

The present case is controlled by entirely different considerations. The plaintiff's contract is itself extraordinary, and was entered into under circumstances such as justify the belief that both parties to it were aware that it would not meet with the approval of the board of regents as it was soon to be reconstructed. The plaintiff sues to recover compensation for the entire period embraced in this contract, and squarely challenges the right of the board of regents to discharge him, although in their opinion, honestly entertained and without fraud on their part, the best interests of the college required such action. We cannot sustain this contention without nullifying the statute. Its language is too plain to require construction. It says: "The board shall have power to remove any professor whenever the interests of the college shall require." By this law the interest of the college is committed to the sound discretion of the board of regents. Considerations which should move them, both in employing and in discharging a professor, rest upon grounds that are not a proper subject of judicial investigation. There is no charge in the petition that the regents acted fraudulently or in bad faith. If we allow the plaintiff to recover, we must, therefore, adopt either one of two propositions: (1) That the regents, in their corporate capacity, are to be held liable in damages for discharging a teacher because the welfare of the college so required; or (2) that the question of the welfare of the college is in every case one ultimately for judicial determination. If we adopt the former proposition, there would obviously be a judicial repeal of the statute; for if damages are recoverable for the exercise of a plain statutory power it would be as though the statute were not in existence. This, however, is the main argument urged to sustain the right of recovery. It is said that though the statute empowers the board of regents to discharge a professor whenever in their judgment the best interests of the college require such action, still, if the discharge is wrongful, the board would be liable in damages. This is a vicious reasoning in a circle. If the regents are vested with the right to discharge a professor whenever in their judgment the best interests of the college require such action, then, if they act in good faith, the discharge cannot be "wrongful." To hold at one moment that the board had the legal right to discharge and at the next moment to impose full damages for the exercise of that right amounts to a destruction of the right itself. It is elementary knowledge that the law which is in force at the time a contract is made becomes a part of the contract. Under this rule the clause of the statute giving the right to remove a professor whenever in the honest judgment of the regents the interests of the

college required was as much a part of the contract of employment as if the language had been expressly embodied among its provisions. If that be the case, it is difficult to see how an exercise of the right can give rise to a legal cause of action. It is further urged in the brief of counsel for the plaintiff in error that the Legislature never intended by the statute that the right of removal should be exercised during the term of an employment fixed by contract. We are, however, unable to give any effect to the statute unless it be held to cover that precise situation. If it be assumed that a professor is engaged without contract, and that his tenure is at will, then either party would be at liberty to terminate such a relationship without the aid of the statute. There would be no legal obligation to hold either the board or the professor to a continuance of the employment. To terminate it would constitute no legal wrong. On the other hand, the statute was necessary to give to the board authority to discharge a professor in case his contract was for a fixed period. It was because the Legislature thought it wise that all such contracts should be made subject to this right of revocation that the statute was passed. Any other holding simply nullifies the law.

To accept the second of the above alternatives is no less plainly violative of elementary principles of law. Questions concerning the efficiency of a teacher in an institution of learning, his usefulness, his relations to the student body and to the other members of the faculty, are so complicated and delicate that they are peculiarly for the consideration of the governing authorities of the institution. It may be perfectly apparent to them that the presence of a teacher is prejudicial to the welfare and discipline of the college, although it would be difficult, if not impossible, to make it so appear to a jury by the production of evidence in court. It would certainly be unusual to submit to a jury the question, "Will the interests of an institution of learning be promoted by dispensing with the services of a particular professor?" And yet if we assume that the statute of the state is of any virtue, it is just such a question that the plaintiff in error sought to have determined in the Circuit Court. It is a question which, in our opinion, the Legislature intended to commit to the sound judgment of the regents who are selected because of an especial fitness for the performance of such duties, and who, by their experience and their intimate familiarity with the institution, are qualified to exercise that discretion in a far sounder manner than any court or jury could be qualified by evidence adduced through witnesses. It is elementary that no cause of action can arise from the lawful exercise of a statutory power in the absence of an express provision conferring it. It is also a principle of law as securely founded that an exercise of a power by an administrative board or officer to whose judgment and discretion it is committed is not a proper subject of review by the courts when fraud or conditions equivalent thereto do not exist. Head v. University, 19 Wall. 530, 22 L. Ed. 160; Board of Education v. Stotlar, 95 Ill. App. 250; Gillan v. Board of Regents, 88 Wis. 7, 58 N. W. 1042, 24 L. R. A. 336; Queen v. Darlington School, 6 Q. B. 682; U. S. v.

Arredondo, 6 Pet. 729, 8 L. Ed. 547; In re Hennen, 13 Pet. 230, 10 L. Ed. 138; State v. Hawkins, 44 Ohio St. 98, 5 N. E. 228; Farrelly v. Cole, 60 Kan. 356, 372, 56 Pac. 492, 44 L. R. A. 464; City of Emporia v. Gilchrist, 37 Kan. 532, 15 Pac. 532. The language of the Supreme Court of Wisconsin in the case above cited (Gillan v. Board of Regents, 88 Wis. 7, 58 N. W. 1042, 24 L. R. A. 336) seems to us entirely sound:

"The trial of a teacher in a normal school on charges of misconduct, with its delays and publicity, and the excitement it would produce and the feelings it would engender, would be very injurious to the school, and it would most likely make heated partisans of the other teachers and the scholars in the contest, and the evil consequences would be great, if not endless. There is no other way in which the character of a teacher can be saved except by silent removal. An ill-disposed and perverse teacher might prefer to have charges against him made public, and to rally his forces of teachers and scholars and outside friends, and have a battle with the board, no matter how much the school might be injured by it. Such a hearing, however, would seem to defeat the wise purpose that the Legislature had in view in giving the board this power of removal at pleasure."

Being satisfied, as we are, that the Mudge Case did not present the questions that are controlling in the present case, we feel at liberty to deal with the present case upon general principles of law, giving to the general language in the Mudge Case only such weight as we believe it entitled to as a matter of reason, and not as a matter of authority. Treating it thus, we find no error in the action of the trial court justifying a reversal of its judgment. It is therefore affirmed.

SANBORN, Circuit Judge (dissenting). I agree with the majority of the court that on March 18, 1899, the board of regents of the Kansas State Agricultural College made a lawful agreement with the plaintiff, Ward, that they would employ him as a professor at a salary of $1,450 per annum until the close of the school year ending June 30, 1901, and that the provision of the statute that "they shall have the power to remove the president and any professor or teacher whenever the interest of the college shall require" entered into and became a part of the contract. But I am unable to bring my mind to the conclusion that this provision authorized the board of regents by their act of removal to violate their contract of employment or to deprive the plaintiff of his salary in the absence of some sound reason for his discharge. The only effect of this provision, in my opinion, was that the board of regents might remove the professor, subject always to his right to enforce his contract and recover damages for its breach in case he was removed without just cause. Any other construction disables the board from making any contract of employment for a term, or for a time certain; for a pretended contract for a time certain, which one of the parties may terminate at will at any time, is no contract for a term. The question has, it seems to me, been decided by the Supreme Court of Kansas, and its decision upon this issue should control in this court. The national courts uniformly follow the construction of the Constitution and statutes of a state given by its

highest judicial tribunal in all cases that involve no question of general or commercial law and no question of right under the federal Constitution or laws. Madden v. Lancaster County, 65 Fed. 188, 192, 12 C. C. A. 566, 570; Illinois Trust & Sav. Bank v. City of Arkansas City, 76 Fed. 271, 279, 22 C. C. A. 171, 179, 34 L. R. A. 518; Detroit v. Osborne, 135 U. S. 492, 499, 10 Sup. Ct. 1012, 34 L. Ed. 260.

In Board of Regents v. Mudge, 21 Kan. 223, 224, 228, 229, this board of regents made a contract on July 16, 1873, for the employment of Mudge for one year. On September 4, 1873, they adopted a resolution that each professor should give and receive three months' notice of resignation or discharge, except in case of gross misconduct. They discharged Mudge on February 6, 1874, without notice, although he was not guilty of misconduct. For three months thereafter he was out of employment, and he sued the board for compensation for these three months. He recovered. The counsel of the board of regents urged two reasons for the reversal of the judgment. The first was stated in these words:

"The plaintiff below was subject to any resolution the board of regents might pass terminating the relation between the parties whenever in the opinion of the board the interest of the college required the passage of such a resolution. The Legislature has vested the government of this college in the plaintiff in error, and made it, and no other tribunal, the judge of what is for the interest of the institution; and the relation existing between the plaintiff and defendant does not result from any contract made and entered into by them, but from the laws existing at the time for the government of the agricultural college, creating professorships, fixing, increasing, and diminishing the regular number of professors and teachers, and providing for the removal of the president, and any professor or teacher, whenever the interest of the college required it. Head v. University, 19 Wall. 526, 22 L. Ed. 160."

The second reason was that the resolution regarding the three-months notice of resignation or discharge was immaterial and ineffective in any event. The court considered both propositions, and decided that neither of them was tenable. The portion of the opinion pertinent to the first proposition reads in this way:

"(1) The act relating to the agricultural college (Gen. St. 1868, p. 75, c. 3) provides, among other things, as follows:

" 'Sec. 2. The government of such college is vested in a board of regents,' etc.

" 'Sec. 3. The board of regents shall constitute a body corporate, with the right, as such, to sue and be sued, to use a common seal, and to alter the same at pleasure.'

" 'Sec. 4. The regents shall have power to enact ordinances, by-laws, and regulations for the government of said college; to elect a president; to fix, increase, and diminish the regular number of professors and teachers; and to appoint the same, and to determine the amount of their salaries. They shall have power to remove the president and any professor or teacher whenever the interest of the college shall require.'

" 'Sec. 12. The board of regents shall have the general supervision of the college and direction and control of all expenditures.'

"It will be seen from the foregoing sections of the statute that the power reposed in the board of regents is very extensive. They are a corporation having the entire control of all departments of the college—educational, financial, and administrative. They have the power to appoint and discharge the president, and all the professors and teachers, and to fix and increase

or diminish their several salaries. But with all these powers, they are not supreme, nor irresponsible. They may 'sue and be sued,' just as the managing officers of other public corporations, such as cities, towns, counties, townships, and school districts, may. While their powers are extensive, still they may render their board liable by the wrongful exercise of such power. Thus they have the unquestioned and the continuing power of employing a president and professors and teachers whenever they may choose, and of discharging any of them whenever they may choose; but if they agree to employ a president or professor or teacher for a period of three months, and then wrongfully discharge him before the three months has elapsed, they will leave their board responsible for the whole amount of the salary for such three months, notwithstanding such discharge. While the Legislature unquestionably intended to confer upon the board of regents extensive powers, yet it did not intend to confer upon them the irresponsible power of trifling with other men's rights with impunity. And making the regents responsible for their acts does not in the least abridge their powers. It only tends to make them more cautious and circumspect in the exercise of their powers."

This opinion seems to me to be a plain and authoritative ruling that if the board of regents agreed to employ a professor or teacher for a period of two or three years, and then wrongfully discharged him before this time has elapsed, they left their board responsible for the whole amount of the salary for the length of time for which he was lawfully employed notwithstanding his discharge. And this seems to me to be a just and rational ruling.

This ruling is not less effective or binding upon the federal court because the decision of the case is placed upon two propositions which were pertinent to the issue, to wit, the effect of the statute and the effect of the rule, instead of upon one. Where a court places its decision of the ultimate legal issue before it upon its decision of two legal questions which were pertinent to the issue, were debated at the bar, and were considered and determined in the opinion, the decision of each of the two questions, and of every pertinent legal question decided in reaching either decision, has the binding force of an adjudication, and is not mere obiter dictum. Union Pac. Ry. Co. v. Mason City & Ft. Dodge R. Co., 64 C. C. A. 348, 354, 355, 128 Fed. 230, 236, 237.

In Board of Education of City of Ottawa v. Cook, 45 Pac. 119, the Court of Appeals of Kansas has reached the conclusion announced by the Supreme Court in the Mudge Case in the consideration of a similar issue. In that case the board of education employed a teacher for the term of one year, commencing in September, 1890, under a rule which read in this way:

"At the regular meeting in June or as soon thereafter as practicable the board shall elect the teachers of the public schools to hold their positions for one year unless sooner removed by vote of the board."

On March 18, 1891, the teacher was removed by a vote of the board. She sued to recover her salary for the remainder of the year. The court held that the clause, "unless sooner removed by vote of the board," did not mean that the board might remove her without cause at its pleasure or caprice, and that notwithstanding she was removed by a vote of the board that removal left the board liable for her salary throughout the year, and the court affirmed a judgment in her favor for her compensation.

Both because a construction of the Kansas statute which gives the board of regents the power to remove its employés without cause at any time seems to me to be unreasonable and inconsistent with the existence of any contract for a term, and because the courts of Kansas have so decided this question in construing this statute, I am of the opinion that the judgment below should be reversed, and that the case should be remanded for answer and trial.