(No. 1621, June 6, 1914.)

H. M. SMITH, Appellee, vs. THE DIRECTORS OF THE INSANE ASYLUM OF NEW MEXICO, Appellant.

### SYLLABUS BY THE COURT.

1. Where the statute creating the New Mexico Insane Asylum, made the directors of said institution a corporation, with power to contract and be contracted with, and also provided for the appointment of all necessary subordinate officers and employes, and gave to the directors the power to remove any officer or employe of said asylum, when in their judgment it was to the best interest of said institution, such provision became a condition in and a part of the contract for the employment of a medical superintendent for a specified time; and hence, such board, in its corporate capacity, was not liable in damages for a breach of such con-

tract, where it discharged such superintendent before the expiration of his contract, under such power so given by the statute; and the courts cannot review the judgment, so to be exercised by said board.    P. 147

Appeal from District Court, San Miguel County. David J. Leahy, Presiding Judge. Reversed and Remanded.

JOHN D. W. VEEDER AND ELMER E. VEEDER, Las Vegas, N. M., for Appellant.

Proceeding suit against State of New Mexico. Art. 14 of Const., Sec. 1.

Useless for court to render judgment against defendant. 34 S. E. Rep. 617; 52 Pac. Rep. 921; 38 S. E. Rep. 131.

Statute treats appellant as individual. Sec. 3615 C. L. 1897; 58 S. E. Rep. 752; 43 Ia. 140; 66 N. W. Rep. 234; 45 N. Y. Supp. 887; 23 N. E. Rep. 752; 29 Pac. Rep. 759.

Action for damages for wrongful discharge. Sutherland on Dam., Vol. 2, p. 472; 7 Wis. 355; 61 Mo. 534; 95 Fed. 296; 12 S. W. Rep. 975; 26 S. W. Rep. 1113; 24 Ala. 194; 89 N. Y. 527; 101 Ill. App. 140; 62 N. W. Rep. 120; 31 N. Y. Supp. 667; 34 Atl. Rep. 4; 30 Atl. Rep. 1125; 64 Pac. Rep. 135; 173 U. S. 1; 31 N. Y. Supp. 667.

Custom of courts. 61 Mo. 534.

Right of Appellant to remove appellee. Secs. 3612, 3615, 3611, 3574, C. L. 1897; Mechem on Public Officers, Sec. 454; Vol. 29 Cyc., p. 408; 135 U. S. 240; 182 U. S. 419; 13 Peeters (U. S.) 230 (261); 77 Pac. Rep. 222; 58 N. W. Rep. 1042; 21 Wis. 502; 32 Pa. St. Rep. 478; 51 Ill. 110; 25 La. Ann. Rep. 119; 36 Pac. Rep. 281; 59 Pac. Rep. 702; 81 Pac. Rep. 674; 7 Cal. 97; 69 Pac. Rep. 255; 66 N. W. Rep. 234; 38 Pac. Rep. 14; 34 Pac. Rep. 981; 92 N. Y. 191; 45 N. Y. Supp. 887; 21 N. E. Rep. 949; 50 N. W. Rep. 809; 14 Fla. 220; 58 S. E. Rep. 762; 46 N. J. L. 344; 24 Tex. 253; 56 So. Rep. 211; 35 S. E. Rep. 6; 92 N. E. Rep. 486; 104 S. W. Rep. 766; 71 S. E. Rep. 795; 56 Pac. 737.

HERBÈRT W. CLARK, CHARLES W. G. WARD AND S. B. DAVIS, JR., for Appellee.

Contractual power. 91 Pac. 459; 97 Pac. 1003; 35 Cal. 576; 138 Fed. 96; 110 Mo. 254; 68 Fed. 787; 85 Fed. 27; 74 Conn. 257; 127 U. S. 300; 31 N. E. 827.

Rule that public employment, held at pleasure of appointing power, may be terminated at any time has no application to this case. 135 U. S. 240; 128 U. S. 419; 21 Wis. 502; 90 Ill. 186; 25 La. Ann. 119; 36 Pac. 281; 59 Pac. 702; 66 N. W. 234; 38 Pac. 14; 34 Pac. 98; 92 N. Y. 191; 50 N. W. 809; 11 So. 845; 14 Fla. 220; 58 S. E. 762; 46 N. J. L. 344; 24 Tex. 253.

Fact that appointing power has right of removal does not preclude making of contract of employment, and the period of employment may exceed term of office of appointing body. 39 Atl. 335; 102 Minn. 142; 67 N. Y. 36; 196 Mass. 539; 37 Pac. 282; 29 N. E. 385; 36 Mont. 188; 40 Pac. 475; 147 Fed. 1; 21 Kan. 223; 77 Pac. 372; 58 N. W. 1042; 43 Ia. 140; 45 N. Y. Supp. 887; 15 Ill. 110.

Character of insane asylum as state institution does not prevent bringing this action. 97 Ky. 458; 56 S. W. 525; 43 L. R. A. 703; 34 S. E. 617; 38 S. E. 131; 6 Okla. 593.

Court did not err in striking out Paragraphs 1-6 of second defense in appellant's answer. 29 N. E. 385.

Court did not err in allowing damages for contract period, extending past day of trial. 62 N. W. 120; 178 U. S. 1; 173 U. S. 1; 163 Mass. 95; 31 Vt. 582; 112 Mich. 648; 55 L. R. A. 170; 163 Mass. 95.

## STATEMENT OF FACTS.

On the 6th day of September, 1910, the Board of Directors of the New Mexico Insane Asylum entered into a written contract with the appellee herein, by the terms of which said appellee was employed as Medical Superintendent of said Asylum for the term of five years, at a stated compensation.

Pursuant to the terms of the contract, Dr. Smith gave up a lucrative practice in East Las Vegas, moved to the Asylum, and faithfully performed all his duties under the contract, until September 9, 1912, when the appellant board refused to allow him to perform them further. On the 3rd day of the same month, the Board of Directors of said Institution passed the following resolution:

"Whereas, In the judgment of the Board of Directors of the Insane Asylum of Las Vegas, New Mexico, it is to the best interest of said institution that a change should be made in the position of physician and medical superintendent of said institution; therefore, be it

"Resolved, By the board, that the present physician and medical superintendent, H. M. Smith, be and he hereby is removed from said position as physician and medical superintendent of the insane asylum, such removal to take effect upon the adoption of the resolution."

On the same date and at the same meeting the president of the board nominated Dr. William Porter Mills, of Las Vegas, for the position of physician and medical superintendent of said asylum, which said nomination was then and there ratified by the Board of Directors.

Shortly after being ousted from such employment, Dr. Smith instituted this suit, to recover damages, for breach of said contract by the board. The appellant demurred to the complaint, which was overruled by the court; thereupon it filed an answer to the merits. Thereupon the case was tried to the court without the intervention of a jury and a judgment was rendered in favor of the appellee in the sum of $970.00, together fith costs of suit and interest. From such judgment this appeal is prosecuted.

## OPINION.

ROBERTS, C. J.—The New Mexico Insane Asylum was created by the act appearing as Chapter 138 of the Laws of 1889, compiled as Sections 3606, et seq., C. L. 1897. Its management is vested in a board consisting of five members (Sec. 3608), who hold office for a period of five

years, the term of one member expiring every year (Secs. 3610, 3572.) The board is declared to "constitute a body corporate" with the right of "suing and being sued," "contracting and being contracted with" (Sec. 3610). Sec. 3611 provides for the election of a president and other officers of said board. By Sec. 3612 it is provided, "He (the president) shall also generally direct the affairs of said asylum, nominate and by and with the advice and consent of the board of directors, employ all physicians, nurses, guards and other employes deemed necessary by said board to the proper management of said asylum or as herein provided, and in a like manner shall determine the amount of their respective salaries, subject to the provisions and restrictions of this act." Section 3615 reads as follows: "The Board of Directors shall have power to remove any officer or employe of said insane asylum when in their judgment it is to the best interest of said institution."

The controlling question in this case is whether the board of directors of the insane asylum, by entering into a written contract of employment, for a stated time, with appellee, divested itself of the power to remove him, under Section 3615, *supra*. Appellant contends that the board was without the power or authority to contract with appellee, and that employes can only be selected in the manner prescribed by Section 3612. As we view the case, however, this question is of no importance, for, if we concede the power in the board to contract with an employe, for his services for a definite stated time, Section 3615, *supra*, necessarily enters into and becomes a part of any such contract.

"The law is to be deemed a part of every contract; that is, ordinarily, the law as it exists at the time and place of the making." Bishop on Contracts, Sec. 439.

"And that all the laws of a state existing at the time a mortgage or any other contract is made, which affect the rights of the parties to the contract, enter into and become a part of it, and are obligatory on all courts which assume to give remedy on such contracts." Brine vs. Ins.

Co., 96 U. S. 627. See also, O'Kelly vs. Williams, 84 N. C. 281; Banks vs. DeWitt, 42 Ohio State 263; Rogers vs. Allen, 47 N. H. 529; Webster and Gage vs. Rees, 23 Iowa 269; Van Schoonhoven vs. Curley et al., 86 N. Y. 187; Ward vs. Board of Regents, 138 Fed. 372.

In the case of Roberts, adm'r, vs. Cocke etc., 28 Gratt 207, the court say:

"The laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms; and this principle embraces alike those which affect its validity, construction, discharge and enforcement." The legislature evidently considered that it was desirable and advisable that the board of directors of the insane asylum should have the power to discharge any employe or officer when, in the judgment of said board, the best interests of said institution so required, and therefore this power was conferred upon the board by Section 3615, *supra,* and can be exercised by the board whether the employe, or officer, is serving under a simple appointment, under Section 3612, or under a contract, executed by virtue of powers conferred by Section 3610, if it be conceded that this power to contract extends to the employment of officers and employes. And the contract may be thus terminated by the board without incurring liability for damage, for, when the officer or employee contracts with the board in this regard, he does so in view of the section of the statute which gives the board the right to terminate the contract at any time, when, in the judgment of the members of the board the best interests of the institution so require. And, it is manifest, that the courts cannot review the judgment, so to be exercised by such board. To hold otherwise, would mean that in every case of removal, the judgment of a court of competent jurisdiction would be invoked, as to the propriety of the removal, and if found to be without just cause, the state institution would be mulcted in damages, which the taxpayers would be re-

quired to liquidate. Such, of course, was never the intention of the legislature.

In this case, from the record now before us, it is apparent that Dr. Smith has been damaged by the action of the board in removing him. When he entered into the contract with the board, which was evidently made in good faith by all the parties to it, and for the best interests of the institution, he gave up a practice in Las Vegas which was paying him more than five thousand dollars per annum. When discharged by the board, of course it was necessary for him to again build up his practice, which requires years. That he was a faithful, capable and efficient official is not disputed, and it is probably true that his removal was occasioned solely by political considerations, which unfortunately influence the judgment and control the action of so many officials. Nevertheless, the legislature has placed it beyond the power of the courts to inquire into the motives which prompted the removal, and no relief can be awarded the appellee.

It is undeniably the law, that a party may waive the advantage of a statute intended for his sole benefit, but there are grave reasons why a law enacted from public considerations should not be abrogated, or waived, by mere private agreement.

The statute here under consideration is of this character. It was evidently the intention of the legislature that the board of directors should at all times have the right to dispense with the services of any employe or officer, so that such officers and employes should at all times be in harmony and co-operate with the board.

The same provisions, in this regard, found in the act creating the insane asylum, are also present in the legislative enactments creating various other state institutions. The Board of Regents of the University of New Mexico is made a corporation, given the power to contract and be contracted with, to sue and be sued (Sec. 3573, C. L. 1897). Section 3575 provides for the appointment of professors, tutors, etc., in almost the identical language found in Section 3612, *supra*, while a similar

power of removal (Sec. 3615) is found in Section 3578. The same is true of the New Mexico School of Mines, Sections 3594, 3596 and 3601, C. L. 1897, and the Asylum for the Deaf and Dumb; the New Mexico Reform School, the New Mexico Institute for the Blind, and the Miners' Hospital of New Mexico (Chap. 2, S. L. 1903.)

If we should give the construction to the statute, in this case, for which appellee contends, the result would be that boards of directors of the various institutions above named, would have the power, should they choose to exercise it, of contracting with favorite employes and officers for long terms, extending beyond the terms of the then members of the boards, which their successors would be powerless to abrogate, without incurring liability in damages for breach of contract, unless they were able to establish in court legal grounds for discharging such officers and employes, however detrimental to the interests of such institutions, the retention of such officers and employes might be. The probable result would be that officers and employes, under contract, would be retained, to the detriment of the institutions, rather than incur such liability, or, if not, then such institutions would be subjected to endless litigation, and the taxpayers required to respond in damages.

"Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice; to favor public convenience, and to oppose all prejudice to public interests." Lewis' Sutherland Statutory Construction (2nd Ed.), Sec. 490. Our construction of this statute is in harmony with the above rule.

In Wisconsin the Board of Regents of the Normal Schools has power "to remove at pleasure any principal, assistant or other officer or person from any office or employment in connection with any such school." This statute came before the supreme court of that state for construction in the case of Gillan vs. Board of Regents of Normal Schools, 88 Wis. 7, 58 N. W. 1042, and the court say:

"This power of summary removal of a teacher, vested in the board by the statute, is a discretionary power, and its exercise in a given case cannot be inquired into, or questioned by the courts." * * * * *

"This statute that gives the board the power of removal of all teachers at pleasure becomes a part of every contract the board makes with a teacher for his employment in the normal school. * * * * *

"The Board of Regents could make no by-law or contract by which this power could be bargained away, limited or restricted."

Appellee argues that this case is distinguishable from the present case in that it does not appear that express power to contract was given by the Wisconsin statute to the board. The court, however, assumed that the board had the power to contract for the services in question, and it would make no difference whether such power was expressly granted or only impliedly conferred. The court say:

"The statute became a condition of his contract as much as if it was written in it, that the board might remove him at pleasure. He accepted employment with knowledge of the law on this condition of his contract, and he has no reason to complain of it."

This case is cited with approval by the Circuit Court of Appeals in the case of Ward vs. Board of Regents of Kansas State Agricultural College, 138 Fed. 373, 70 C. C. A. 512. In this case Ward was employed by the board of regents as a professor of English Language and Literature for a period of almost two and one-half years, by a written contract. A change in the personnel of the board occurred within a few days after the contract was executed, and the new board removed him from office and cancelled the contract. The statute creating the institution made the board a corporation, and gave it the power to contract and be contracted with, sue and be sued. It also provided that the board should have the power to elect a president, to fix, increase, and diminish the regular number of professors and teachers; and to appoint

the same and determine the amount of their salaries. The board was further given the power to remove the president and any professor or teacher whenever the interests of the college should require. The statute being very similar to our statute creating the New Mexico Insane Asylum and prescribing the power and duties of the Board of Directors.

Ward brought suit to recover the amount of his salary for the unexpired term of the contract in the federal court, he being a resident of New Hampshire. The reasoning of the Circuit Court of Appeals is so directly applicable to the case now under consideration that we quote at length from the opinion:

"The plaintiff sues to recover compensation for the entire period embraced in this contract, and squarely challenges the right of the board of regents to discharge him, although in their opinion, honestly entertained and without fraud on their part, the best interests of the college required such action. We cannot sustain this contention without nullifying the statute. Its language is too plain to require construction. It says: 'The board shall have power to remove any professor whenever the interests of the college shall require.' By this law the interest of the college is committed to the sound discretion of the board of regents. Considerations which should move them, both in employing and in discharging a professor, rests upon grounds that are not a proper subject of judicial investigation. There is no charge in the petition that the regents acted fraudulently or in bad faith. If we allow the plaintiff to recover, we must, therefore, adopt either one of two propositions: (1) That the regents, in their corporate capacity, are to be held liable in damages for discharging a teacher because the welfare of the college so required, or (2) that the question of the welfare of the college is in every case one ultimately for judicial determination. If we adopt the former proposition, there would obviously be a judicial repeal of the statute; for if damages are recoverable for the exercise of a plain statutory power it would be as though the statute were not

in existence. This, however, is the main argument urged to sustain the right of recovery. It is said that though the statute empowers the board of regents to discharge a professor whenever in their judgment the best interests of the college require such action, still, if the discharge is wrongful, the board would be liable in damages. This is a vicious reasoning in a circle. If the regents are vested with the right to discharge a professor whenever in their judgment the best interests of the college require such action, then, if they act in good faith, the discharge cannot be 'wrongful.' To hold at one moment that the board had the legal right to discharge and at the next moment to impose full damages for the exercise of that right amounts to a destruction of the right itself. It is elementary knowledge that the law which is in force at the time a contract is made becomes a part of the contract. Under this rule, the clause of the statute giving the right to remove a professor whenever in the honest judgment of the regents the interests of the college required was as much a part of the contract of employment as if the language had been expressly embodied among its provisions. If that be the case, it is difficult to see how an exercise of the right can give rise to a legal cause of action. * * * * To accept the second of the above alternatives is no less plainly violative of elementary principles of law. Questions concerning the efficiency of a teacher in an institution of learning, his usefulness, his relations to the student body and to the other members of the faculty, are so complicated and delicate that they are peculiarly for the consideration of the governing authorities of the institution. It may be perfectly apparent to them that the presence of a teacher is prejudicial to the welfare and discipline of the college, although it would be difficult, if not impossible, to make it so appear to a jury by the production of evidence in court. It would certainly be unusual to submit to a jury the question, 'Will the interests of an institution of learning be promoted by dispensing with the services of a particular professor?' And yet if we assume that the statute of the state is of any virtue,

it is just such a question that the plaintiff in error sought
to have determined in the Circuit Court. It is a ques-
tion which, in our opinion, the legislature intended to
commit to the sound judgment of the regents, who are
selected because of an especial fitness for the perform-
ance of such duties, and who, by their experience and
their intimate familiarity with the institution, are quali-
fied to exercise that discretion in a far sounder manner
than any court or jury could be qualified by evidence ad-
duced through witnesses. It is elementary that no cause
of action can arise from the lawful exercise of a statutory
power in the absence of an express provision conferring
it. It is also a principle of law as securely founded, that
an exercise of a power by an administrative board or officer
to whose judgment and discretion it is committed is not
a proper subject of review by the courts when fraud or
conditions equivalent thereto do not exist." See also the
State vs. Platner, 13 Iowa 140; Jones vs. Nebraska City,
1 Neb. 176; Ewin vs. Independent School District No. 8,
10 Idaho 113; 77 Pac. 222.

Appellee cites a great many cases, which he contends
support his theory of the law. Many of these cases, how-
ever, are distinguishable from the present case, because
of varying statutory provisions. The cases upon which he
relies, which are more analogous, are Board of Regents
vs. Mudge, 21 Kansas 223, and State Board of Agricul-
ture vs. Myers (Colo.), 77 Pac. 372.

The Mudge case was explained by the Circuit Court
of Appeals in the Ward case, and differentiated from that
case. Whether or not just grounds for the distinction ex-
isted, is immaterial, for we cannot follow the reasoning of
those cases which apparently disregard the statutory pro-
visions, or so construe it as to leave it without any effect
whatever. Appellee's able counsel contend that the statute
was only intended to apply to those officers and employes
selected and appointed pursuant to the provisions of Sec-
tion 3612. The same contention was advanced in the Ward
case, *supra*, the court say:

"It is further urged in the brief of counsel for the

plaintiff in error that the legislature never intended by the statute that the right of removal should be exercised during the term of an employment fixed by contract. We are, however, unable to give any effect to the statute unless it be held to cover that precise situation. If it be assumed that a professor is engaged without contract, and that his tenure is at will, then either party would be at liberty to terminate such a relationship without the aid of the statute. There would be no legal obligation to hold either the board or the professor to a continuance of the employment. To terminate it would constitute no legal wrong. On the other hand, the statute was necessary to give to the board authority to discharge a professor in case his contract was for a fixed period. It was because the legislature thought it wise that all such contracts should be made subject to this right of revocation that the statute was passed. Any other holding simply nullifies the law."

For the reasons stated, the complaint failed to state a cause of action. The cause is, therefore, reversed, and remanded with directions to the district court to dismiss the same, and it is so ordered.