(June 4, 1904.)

# EWIN v. INDEPENDENT SCHOOL DISTRICT NO. 8.

## [77 Pac. 222.]

TEACHER'S CONTRACT—POWER OF TRUSTEES TO DISMISS TEACHER—DISCRETION OF TRUSTEES.

1. A contract between a teacher and a school district wherein E. is designated as party of the first part, and "The Board of Trustees of School District No. 8," etc., designated as the party of the second part, and the contract is signed by E. and the individual members of the school board whose names are followed by the further subscription: "The Board of Trustees of School Dis-

trict No. 8, in and for the County of Shoshone, State of Idaho," it is held to be a sufficient compliance with section 34 of the school act (Sess. Laws 1899, p. 92) to constitute such agreement the contract of the school district and enforceable as such.

2. Under section 45 of the school law which authorizes a board of trustees to discharge a teacher "for neglect of duty, or any cause that, in their opinion, renders the services of such teacher unprofitable to the district," but requires that "no teacher shall be discharged before the end of his term without a reasonable hearing," *held*, that before such a teacher can be removed he must have notice and an opportunity to be heard.

3. Under section 84 of same act, which empowers the board of trustees of an independent school district "to employ or discharge teachers" without specifying any cause or requiring any notice to the teacher, such board has unlimited and unrestricted power to dismiss either with or without notice to the teacher, and the exercise of such discretion by the board is not subject to review or control by the courts.

(Syllabus by the court.)

APPEAL from District Court in and for the County of Shoshone. Honorable Ralph T. Morgan, Judge.

From a judgment in favor of defendant on sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

W. B. Heyburn and John P. Gray, for Appellant.

Under the statute authorizing school boards to employ or discharge teachers, it is not necessary that the members thereof should meet and act as a board in order to make a valid contract for the employment of a teacher, when they all assent to the employment. (*School Dist. No. 25 v. Stone,* 14 Colo. App. 211, 59 Pac. 885; *Crane v. Benington School Dist.,* 61 Mich. 299, 28 N. W. 105.) The presumptions are in favor of the regularity of the proceeding of a school board, and it is incumbent upon the defendant to show the defects, if any. (*Splaine v. School Dist. No. 122,* 20 Wash. 74, 54 Pac. 766.) In the absence of proof to the contrary, it will be presumed that a contract with a teacher, which is signed by all the district officers, was authorized at a meeting of the board, although they were not together when they signed it. (*Dolan v. Joint School Dist.,* 80 Wis. 155, 49 N. W. 960.) Upon this question

of the right to discharge, the position of appellant is this: 1. That a contract made by a board of directors, having power to employ teachers for the ensuing year, even though there be a change in the directorate, is binding upon the district and upon the new board; 2. That the right of summary removal does not exist in the case of the removal of school teachers, except where specifically given by law; 3. That the power of removal in Idaho is governed by the provisions of section 45 of the act approved February 6, 1899; 4. That section 45 was by operation of law incorporated into, and read into, the contract upon which this suit was brought; 5. That the independent school district was bound by the contract and the provisions thereof, and the law which was incorporated therein, as much as the board which it succeeded.   School directors have power to hire a teacher for an ensuing year, though there will be a change in the membership of the board before the term begins.   (*Splaine v. School Dist. No. 122,* 20 Wash. 74, 54 Pac. 766.)   A subsequent school board cannot abrogate a legal contract made by its predecessor, without valid reason therefor.   (*Farrel v. School Dist. No. 2,* 98 Mich. 43, 56 N. W. 1053; *Thompson v. Gibbs,* 97 Tenn. 489, 37 S. W. 277, 34 L. R. A. 548; *School Dist. No. 3 v. Hale,* 15 Colo. 367, 25 Pac. 308, 309; *School Dist. v. McCoy,* 30 Kan. 268, 46 Am. Rep. 92, 1 Pac. 97; *Neville v. School Directors,* 36 Ill. 71; *Kennedy v. Board of Education,* 82 Cal. 483, 22 Pac. 1042; *Fairchild v. Board of Education,* 107 Cal. 92, 40 Pac. 26; *Marion v. Board of Education,* 97 Cal. 606, 32 Pac. 43, 20 L. R. A. 197.)   The discretion vested in the board to remove for a cause which in their judgment is sufficient is a discretion which must be judiciously exercised and one which cannot be abused.   They have a right to remove a teacher for cause, but not so long as the teacher is good, faithful and competent, and does not neglect her duty or otherwise so conduct herself as to render her services inimicable to the welfare of the district.   (*Spaulding v. Coeur d' Alene Ry. etc.,* 5 Idaho, 528, 51 Pac. 408.)

C. W. Beale, for Respondent.

This court has laid down the rule for the government of officers and agents of our public and municipal corporations in

the case of *Clyne v. Bingham County*, 7 Idaho, 75, 60 Pac. 76, in which it is stated that a matter of this kind is not a matter between the trustees (Sutherland, Wourms and McKissick) and appellant, but it is a matter in which the public, the taxpayers—those who "bear the burden in the heat of the day"—have some rights in the premises which cannot be frittered away by public officers. In that case, the county attorney tried to stipulate away the rights of the taxpayers of Bingham county. In this case, Sutherland, Wourms and McKissick tried to make a contract to which they signed their individual names, and a different contract from that authorized by law. In the Clyne case, the court says: "The county attorney cannot stipulate away the rights of the people, and any attempt to do so is unauthorized, unwarranted and deserving of severe rebuke." So we say, applying the same rule to the case at bar, Sutherland, Wourms and McKissick could not stipulate away the rights of the taxpayers of School District No. 8, nor make and execute any contract in any manner, form or substance whatever different from such a contract as is prescribed by law. The mode and manner prescribed by the statute for the execution of contracts on the part of the ordinary school district must be followed strictly, and any other manner is excluded by the law. (*Zottman v. San Francisco*, 20 Cal. 97, 81 Am. Dec. 96.) In order to bind School District No. 8, the trustees must have acted as a board and their actions must have been made a matter of record, and the complaint must show that the contract was made by the trustees for and on behalf of the district, in its name, and only while sitting as a board of trustees. (*Conger v. Board of Commrs.*, 5 Idaho, 347, 48 Pac. 1064; *Dunbar v. Board of Commrs.*, 5 Idaho, 407, 49 Pac. 409; *Castle v. Bannock County*, 8 Idaho, 124, 67 Pac. 35; *Thomas Kane & Co. v. School Dist. No. 112 of Osborn Co.*, 5 Kan. App. 260, 47 Pac. 561; *McCortle v. Bates et al.*, 29 Ohio, 419, 23 Am. Rep. 758.) The concurrence of a majority of the board of directors when duly assembled is essential to the performance of a valid act. The assent of several members separately is not enough and any action based thereon will not be binding upon the district. (*Herrington v. District Township of Liston*, 47 Iowa, 11.)

Appellant was bound to know the law. In fact, the contract upon which she was suing, in direct terms, made the law a part of her contract. This, however, was not necessary, as the law that authorized her summary dismissal by the trustees of respondent, provided School District No. 8 should become an independent district (as it did subsequent to the date of her alleged contract), became a part of her contract, and the same was subject to any laws in existence at the time of the execution thereof. The statute that gives the board power to remove all teachers becomes a part of every contract which a teacher makes for his employment. (*Gillan v. Board of Regents of Normal Schools,* 88 Wis. 7, 58 N. W. 1042, 24 L. R. A. 336; *Head v. Curators of the University of Missouri,* 86 U. S. (19 Wall.) 530, 22 L. ed. 160; *Eckloff v. District of Columbia,* 135 U. S. 240, 10 Sup. Ct. Rep. 752, 34 L. ed. 120.) The courts of Idaho have no jurisdiction to inquire into the question of the proper or improper exercise of authority and discretion exercised by the board of trustees of an independent school district under section 84, Session Laws of 1899, page 105, and, in support of our position, cite the following authorities: *Directors v. Burton,* 26 Ohio St. 421; *In re Hennen,* 13 Pet. 230, 10 L. ed. 138; *Langdon v. Mayor,* 92 N. Y. 427; *Gillan v. Board of Regents of Normal Schools,* 88 Wis. 7, 58 N. W. 1042, 24 L. R. A. 336; *Knowles v. Boston,* 12 Gray (Mass.), 339; *Wood v. Medfield,* 123 Mass. 545. If some school board is liable to appellant, she should have sued it and not this respondent. The well-known doctrine that a pleading should be strictly construed against the pleader is especially applicable to the case at bar. (*Collins v. Townsend,* 58 Cal. 608; *Hays v. Steiger,* 76 Cal. 555, 18 Pac. 670; 4 Ency. of Pl. & Pr., p. 759.) The declaration in the amended complaint that appellant was discharged without cause and in violation of her contract is merely a conclusion, which the demurrer in this case does not admit as being true. (*Ollis v. Orr,* 6 Idaho, 474, 56 Pac. 162; *Langdon v. Mayor,* 92 N. Y. 427.)

AILSHIE, J.—This case was commenced in the district court of Shoshone county by the plaintiff, Elizabeth Ewin, for the recovery of $300 damages for her wrongful dismissal as a

teacher in the public schools of the town of Wallace. By her complaint she alleges that on the eighth day of April, 1901, the town of Wallace constituted School District No. 8 of Shoshone county and that Angus Sutherland, J. H. Wourms and D. C. McKissick were at that time the members of its board of trustees. She alleges that on that date, and while she was the holder of a valid teacher's certificate authorizing and entitling her to teach in any of the schools of Shoshone county, she entered into a contract in writing with the board of trustees of said district whereby they employed her to teach in the public schools of that district at the monthly salary of $75 for a period of nine months from and after the second day of September, 1901. That on the seventeenth day of May, 1901, and in pursuance to the provisions of chapter 10 of an act of the legislature approved February 6, 1899, entitled "An act to establish and maintain a system of free schools," the town of Wallace and the territory formerly comprising school district No. 8 of Shoshone county was established and created into what was thereafter, and is now, known as the "Wallace Independent School District No. 8"; and that thereupon the said independent school district by virtue of law succeeded to all the rights and privileges and assumed all the duties and obligations of the old district. That pursuant to the contract between the plaintiff and the board of trustees of the old district, she entered upon the performance of her duties as a teacher and continued to discharge such duties until the twenty-fifth day of February, 1902, upon which date the board of trustees of the independent district, "without cause and in violation of their said contract, assumed to discharge the plaintiff as such teacher in disregard of the terms and conditions of the said contract," and that they thereafter excluded her from the school building and prevented her from discharging the duties of a teacher for the remainder of the term to her damage in the sum of $300, balance due her under and by virtue of her contract for the full period of nine months.

The foregoing are, in substance, the allegations of the plaintiff's amended complaint. The contract upon which the action is brought is pleaded *in haec verba*. To this complaint the de-

fendant district demurred upon the grounds that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was sustained and judgment was entered for the defendant and this appeal is taken therefrom.

The only question presented for our consideration upon this appeal is as to the sufficiency of the complaint. The defendant seems to have urged two reasons in the lower court why its demurrer should be sustained and has presented the same questions in this court. The first reason presented is that the contract pleaded was never a legal or binding contract between the plaintiff and School District No. 8. This contention is predicated upon the terms of the contract and manner of its execution. The contract on its face purports to have been entered into "between Elizabeth Ewin, party of the first part, and the board of trustees of School District No. 8 of the county of Shoshone, in the state of Idaho, party of the second part," and is signed as follows: "In testimony whereof we have hereunto set our hands the day and year first above written.

> "ANGUS SUTHERLAND,
> "JOHN WOURMS,
> "D. C. McKISSICK,

"The Board of Trustees of School District No: 8, in and for the County of Shoshone, State of Idaho.

> "ELIZABETH EWIN, Teacher."

Section 34 of the school law (Sess. Laws 1899, p. 92), provides that "each regularly organized school district in the state is hereby declared to be a body corporate by the name and style of School District No ——, in the county of ——, in the state of Idaho, and in that name the trustees may sue and be sued, hold and convey property for the use and benefit of such district and make contracts the same as municipal corporations in this state." Under this provision of the statute it is contended by respondent that the contract should have been executed by "School District No. 8 in the county of Shoshone, state of Idaho," by and through its proper officers and not by the board of trustees in their individual capacity. As a matter of law we think this contention is correct, but the contract here pleaded discloses upon its face that it was executed for the

school district and as its contract and agreement and for its use and benefit. It is such a contract as the district could enforce in its corporate capacity, and, on the other hand, one which the individuals composing the board could not have enforced in any other capacity than as trustees of and for the school district. It is true that this is not executed in the manner and form in which the contracts of corporations are usually executed, but it is not so deficient that we would hold it void as between the plaintiff and the school district represented by the trustees who executed it.

The other contention made by the school district is founded upon the provisions of section 84 of the act of February 6, 1899, entitled "An act to establish and maintain a system of free schools." This act contains eighty-eight sections and is divided into ten chapters. Chapter 6 deals with the election and powers and duties of trustees, the employment of teachers and raising of revenue for the ordinary school district; while chapter 10 provides, *inter alia,* for the organization of independent school districts, the election, qualifications, powers and duties of a board of trustees, the raising of revenue and employment and discharge of teachers. That portion of section 84 upon which the defendant relied for the sustaining of its demurrer is as follows: "The board of trustees of said district must have power to, and it is their duty. . . . . 2. To employ or discharge teachers, mechanics and laborers, and to fix, allow and order their salaries and compensation, and to determine the rates of tuition for nonresident pupils." It is claimed that this statute gives to the board of trustees of an independent school district absolute power and authority to discharge a teacher without notice and without assigning any reason or cause whatever therefor. It is argued by the appellant that since this contract was entered into by the board of trustees of the old district, it must be tested by the provisions of the law governing such boards, and that it could not be terminated in any other manner than that provided for the termination of such contracts by a board of trustees of the ordinary school district. In support of this contention the appellant relies upon that portion of section 45 which provides that "It shall be the duty of the trus-

tees of each district to employ teachers, on a written contract, and to discharge the same, and to fix, allow and order paid their salaries and compensation and the compensation of the clerk of the board, and to determine the rate of tuition of nonresident pupils, and they shall have power to discharge any teacher for neglect of duty, or any cause that, in their opinion, renders the service of such teacher unprofitable to the district, but no teacher shall be discharged before the end of the term, without a reasonable hearing."

It will be seen from the foregoing that a board of trustees of an ordinary school district cannot discharge a teacher before the end of his term without giving him a reasonable hearing, and that such discharge when made must be founded upon a neglect of duty or some cause that in the opinion of the board renders the services of the teacher unprofitable to the district. It will also be seen that when the legislature came to providing the powers and duties of a board of trustees for an independent district, they authorized them to "discharge teachers," and that such power and authority is not coupled with any limitation as to cause for such discharge or notice of hearing thereon. Appellant urges that since section 85 provides that "all the provisions of this act providing for a public school system, wherein not contradictory to or inconsistent with the provisions of this chapter and which may be made applicable to the objects thereof, are adopted as a part of the law governing the establishment and management of independent school districts," the legislature must be understood as having intended to read section 84 in connection with section 45, and thereby require all removals to be made for cause and upon reasonable notice. It seems to us, however, that such an interpretation and construction of these statutes is unauthorized. In fact such a construction would do violence to the intent and purpose of the statute and the objects of the legislature. It was clearly the intention of the legislature to provide that no teacher of an ordinary school district should be discharged prior to the end of his term except for cause, and in no event without a hearing. An examination, however, of the subsequent portions of that act, and especially chapter 10, convinces us that

the legislature meant to, and did, give to independent school districts much more ample and plenary powers upon every subject connected with the schools within such districts than they had granted or intended to grant to the ordinary school district. Indeed, the object of converting a district into an independent district is to enlarge the powers and extend the privileges of the new district thus formed in order to more thoroughly organize, establish and maintain its public schools and secure a higher degree of efficiency and discipline in the school work. It is significant to our minds that the legislature, after having made these requirements as to the discharge of a teacher from a school of the ordinary district, immediately passed to the subject of independent school districts and authorized the discharge of a teacher without attaching any requirements as to cause for discharge or notice of intention to do so. Under the ordinary and generally accepted rules of construction, the legislature, in the same act, having in one section provided that a set of trustees for one class of districts should not discharge a teacher except for cause, after reasonable notice, and in a subsequent section providing that the board of trustees for another class of districts might discharge a teacher, without limiting that discharge to any cause or requiring any notice, they must be deemed to have purposely omitted the cause and notice from the latter section. It was evidently the intention to authorize a board of trustees of an independent school district to discharge a teacher at will or pleasure. The contract must be read in view, equally, of the provisions of both sections 45 and 84, and the appellant must be deemed to have agreed to subject herself to the contingencies of section 84 in the event the district should, in the meanwhile, become organized into an independent school district.

We do not think the authorities cited by appellant upon this branch of the case support her contention under a statute like ours. In *Farrell v. School Dist. No. 2*, 98 Mich. 43, 56 N. W. 1053, a contract was entered into between the board of trustees and a teacher, and before the opening of the school year an election was held, and a majority of the old board went out of office and the new board immediately met and organized and

passed a resolution rescinding the contract executed by the old board in hiring the teacher, and notified him of their action. Of this procedure the supreme court of Michigan said: "For this action no reason was given. It was not in the power of the subsequent board to rescind a contract which was lawfully made by the old board without some valid reason therefor. These school contracts are governed by the same rules as other contracts, and when once lawfully made are equally binding upon both parties. Neither can violate them without compensating the other for the damages sustained." Here, it will be observed, the decision of the court was not founded upon any statutory provision as to the right of dismissal of the teacher; and the opinion rests squarely upon the general law of contracts. *Thompson v. Gibbs,* 97 Tenn. 489, 37 S. W. 277, 34 L. R. A. 549, denies the rights of a board of trustees to discharge a teacher except for cause and after notice to him, and a stipulation in the contract authorizing them to do so was held invalid. An examination of that decision and the statutes of the state of Tennessee upon which it is based discloses the fact that under section 1192 of the statutes of 1884 of that state, it is provided that the school directors are authorized and empowered "to employ teachers and to dismiss them for incompetence, improper conduct, or inattention to duties." In *Morley v. Power,* 5 Lea, 700, the supreme court of Tennessee considered the foregoing provision of their statute and the right of a board of trustees to dismiss a teacher, saying: "The right to remove for the causes mentioned in the act is clear, but the very fact that the causes of removal are specified demonstrates that the discretion is not unlimited. Whenever there is a limitation in the power, the determination whether the case is within the power rests with the courts, not with the officers authorized to remove, for, otherwise, the limitation would be of no avail, the discretion being practically unlimited. Their judgment as to what the law allows them to determine, or as to the extent of their jurisdiction, will be controlled." *School District v. Hale,* 15 Colo. 367, 25 Pac. 308, seems to have been decided upon the general principle applicable to the termination of ordinary contracts. The Colorado court there says: "It was always true

that where a contract of hiring was entered into between two parties for a fixed period, at a definite price, the employer could not escape liability for a discharge without cause. If the contract was broken by the employer, a cause of action at once arose in favor of the one discharged, who might, upon the expiration of the period of hiring, recover damages resulting from the breach." It is worthy of observation, however, that section 305 of the Code of Colorado, referred to in that opinion, provides that "No teacher shall be dismissed without due notice and upon good cause shown and such teacher shall be entitled to receive pay for services rendered." Here, it will be seen, the statute was positive in its terms both as to the cause and as to the giving of notice. *Kennedy v. Board of Education,* 82 Cal. 483, 22 Pac. 1042, seems to turn upon the provisions of section 1793 of the Political Code of California, which provides that when certain teachers have been elected they "shall be dismissed only for violation of the rules of the board of education, or for incompetency, unprofessional or immoral conduct." A decision resting upon a statute like that of California cannot be much authority under a statute like ours. *Fairchild v. Board of Education of the City and County of San Francisco,* 107 Cal. 92, 40 Pac. 26, simply follows the Kennedy case and rests upon section 1793 of the code. In Wisconsin, section 404 of the Revised Statutes provides that a school board may "remove at their pleasure any principal, assistant or other officer or person from any office or employment in connection with any such school," and the supreme court of that state, in *Gillan v. Board of Regents of Normal Schools,* 88 Wis. 7, 58 N. W. 1043, 24 L. R. A. 336, said: "This power of summary removal of a teacher vested in the board by statute is a discretionary power, and its exercise in a given action cannot be inquired into, or questioned, by the courts." And again, they say: "The statute became a condition of his contract, as much as if it was written in it, that the board might remove him at pleasure. He accepted the employment with knowledge of the law on this condition of his contract, and he has no reason to complain of it. These principles appear to be unquestionable. . . . . If the exercise of this discretionary power

conferred on the board by the statute is not effectual to remove a teacher in the normal schools and terminate his wages, then the statute is nugatory and has no force whatever, and it had better be repealed." In *Regina v. Governors of Darlington School*, 51 Eng. Com. L. 68, the school was founded by royal charter authorizing the governors thereof to select a master of such school "so often as to them and their successors, or the major part of them, occasion them moving thereto, should appear, and of removing the same master or usher from the said school, according to their sound discretion." In passing upon the right of the governors to dismiss the master without notice, the court of queen's bench, through Lord Denman, said: "The power of the governors so to remove justifies their so doing; and it is not to be restricted by any opinion which we may form of the reasons on which they have been induced to exert it." This case was taken by error into the exchequer chamber in 1844 and the judgment of the queen's bench was affirmed, Chief Justice Tindal saying: "And there seems nothing unreasonable in the founder's giving such authority to the governors. For there may be many causes which render a man altogether unfit to continue to be a schoolmaster, which cannot be made the subject of charge before a jury, or otherwise of actual proof. A general want of reputation in the neighborhood, the very suspicion that he has been guilty of the offenses stated against him in the return, the common belief of the truth of such charges amongst the neighbours, might ruin the well-being of the school if the master was continued in it, although the charge itself might be untrue, and at all events the proof of the facts themselves insufficient before a jury. Many other grounds of amoval fully sufficient in the exercise of a sound discretion might be suggested." So far as we are able to find, the rule established in this case has never been departed from in the English courts, and the principle, it seems to us, is as sound now and in this country as it was then.

In *Eckloff v. District of Columbia*, 135 U. S. 240, 10 Sup. Ct. Rep. 752, 34 L. ed. 120, the supreme court of the United States discusses the right of removal where the general power to do so is granted without limitation. The conclusion reached

by that court is stated by them as follows: "The grant of a general power to remove carries with it the right to remove at any time or in any manner deemed best, with or without notice."

After an examination of the various authorities cited by respective counsel, as well as others, we conclude that the general principle running through them all is: That where the power to remove is restricted or limited to certain reasons or causes, the final determination as to whether the case falls within any of those causes rests with the courts and may be reviewed or inquired into by them. And that, on the other hand, where the power is general, unlimited, and unrestricted and is once exercised, it cannot, and will not, be questioned or examined into by the courts. It may be exercised either with or without notice.

The complaint in this action showing upon its face, as it does, that the plaintiff was removed by the board of trustees of the independent district, failed to show facts sufficient to constitute a cause of action, and the dmurrer was properly sustained. The judgment of the trial court is affirmed, with costs to respondent.

Sullivan, C. J., and Stockslager, J., concur.