Points Decided.

---

(September 13, 1913.)

## ADELLA HERMANN, Appellant, v. INDEPENDENT SCHOOL DISTRICT NO. 1 OF BONNER COUNTY, STATE OF IDAHO, Respondent.

[135 Pac. 1159.]

SCHOOL DISTRICT — INDEPENDENT — TEACHER'S CONTRACT — POWER OF TRUSTEES TO DISMISS TEACHERS—NOTICE.

1. Sec. 84 of the act of 1899, Sess. Laws 1899, p. 105, defines the general powers of the board of trustees, and paragraph 2 provides, "to employ or discharge teachers, mechanics and laborers and to fix, allow and order paid their salaries and compensation and to determine the rates of tuition for nonresident pupils," and paragraph 2, sec. 129 of chap. 159, Laws of 1911, p. 531, which supersedes sec. 84 of the act of 1899, and which is now in force, provides, in defining the powers of the board of trustees, "to employ or discharge teachers, mechanics and laborers, and to fix, allow and order paid their salaries and compensation, and to determine the rate of tuition for nonresident pupils, and to withhold the salary of a teacher when the county superintendent notifies the board that a teacher does not hold a valid certificate."

2. *Held,* in this case that sec. 84, Laws of 1899, applies to the present case, as the alleged contract was made prior to the enactment of chap. 159, Laws of 1911.

3. Where the board of trustees of an independent school district, organized under the laws of the state, elects a teacher for the district, for a certain time, at a fixed salary, and fixes the time for beginning and ending the school year, and issues a notice of such election to the applicant and attaches to and makes a part of the notice of election the following condition:

"A failure to sign and return this notice of election within ten days from receipt thereof will be considered a declination and the position declared vacant.

"No further contract will be required.

"Notice received and election accepted.

"R. H. DOE,<br>
"Secretary of Board of Directors.

"Date . . . . . .                     . . . . . . . . . . . . . . . . . . . . . .,

. "Teacher."

—and such notice was delivered and received by the teacher and such teacher declines and refuses and fails to sign such acceptance

and does not return the same to the board within ten days thereafter, *held,* that there was no contract made between the board of trustees of Independent School District No. 1 and Adella Hermann, the plaintiff in this case.

4.   The superintendent of schools, or the clerk of an independent school district, has no authority to employ teachers or excuse or waive the terms of a contract proposed by the board to a teacher for signature as a contract between the district and the teacher, without express authority from the board of trustees; this power is vested entirely with the board of trustees.

5.   Under sec. 84, Laws of 1899, p. 105, which was in force at the time of the election of the plaintiff as a teacher and the issuing of notice of such election, the board of trustees had discretion to discharge the plaintiff at any time without notice and without investigation or consideration or any request of the plaintiff, where no services had been performed, even though a contract of employment had been entered into between the district and the teacher.

APPEAL from the District Court of the Eighth Judicial District for Bonner County.   Hon. John M. Flynn, Judge.

An action by the plaintiff for salary under an alleged employment.   Judgment for defendant.   *Affirmed.*

A. P. Asher and G. H. Martin, for Appellant.

It was error for the court to exclude the evidence of the witness Barker and the rules and regulations of the defendant district which were offered.

The doctrine of equitable estoppel is applicable to all corporations.   (*Bissell v. City of Jeffersonville,* 24 How. (U. S.) 287, 16 L. ed 664; *Moran v. Commrs. of Miami County,* 2 Black (U. S.), 722, 17 L. ed. 342; *Supervisors v. Schenck,* 5 Wall. (U. S.) 772, 18 L. ed. 556; Smith on Corp., sec. 1670.)

"Public officers are but agents of the state or municipality they serve, and admissions made by them in the performance of their duties and within their authority are admissible against such state or municipality."   (1 Ency. Ev. 549; *Hofacre v. City of Monticello,* 128 Iowa, 239, 103 N. W. 488; *Farrell v. City of Dubuque,* 129 Iowa, 447, 105 N. W. 696.)

Record action is not necessary to bind the defendant. What was in fact said and done may be proved outside the record. The record is kept by the clerk of the defendant; the plaintiff had no control over the same and she may show what in fact transpired at the meeting if no record thereof was made. (*Sims v. Milwaukee Land Co.,* 20 Ida. 513, 119 Pac. 37.)

H. H. Taylor, for Respondent.

The board had no power to appoint an agent, except that his acts must later be confirmed or ratified, and that by board action with knowledge of all the facts. (*State v. Leonard,* 3 Tenn. Ch. 177; 35 Cyc. 902, note 30.)

"Where an agreement is complete by acceptance, a new proposal to modify it by either party has no effect on the agreement unless it is accepted and thus becomes a new substituted agreement." (9 Cyc. 283.)

"As a general rule, the doctrine that principals are estopped from denying the authority of agents acting within the scope of their apparent power is not applicable to public officers, and if a contract is made by a school board or officers in excess of their authority, the school district cannot be held liable on the ground of estoppel." (35 Cyc. 953, 958, 901.)

In order to constitute a valid ratification, there must be some affirmative corporate action showing an intention to ratify on the part of the district or school board, and it will not be implied from mere silence. (35 Cyc. 964, 965; *Caxton Co. v. School District No. 5,* 120 Wis. 374, 98 N. W. 231; *Broussard v. Verret,* 43 La. Ann. 929, 9 So. 905.)

The conduct of individuals on the board in remaining silent when a statement was made in their presence did not constitute board action. (*Yavapai Co. v. O'Neill,* 3 Ariz. 363, 29 Pac. 430–433.)

Mere discussion without action is not enough. (35 Cyc. 903; *Butler v. School Dist. Leighton,* 149 Pa. 351, 24 Atl. 308.)

The mere statement of a member of the board does not constitute board action, nor does it constitute an admission by the board, even though not denied by the balance of the mem-

bers or any of them.   (Jones on Evidence, 267, 268; 16 Cyc. 1024; 17 Cyc. 507.)

Declarations of a public officer cannot be given in evidence as admissions to bind a municipal corporation, unless part of the *res gestae.*   Later declarations as to an act past and closed are inadmissible.   (*Garske v. Ridgeville,* 123 Wis. 503, 102 N. W. 22, 3 Ann. Cas. 747.)

STEWART, J.—This action was brought in the probate court of Bonner county.   The action was to recover under a contract of employment as a teacher in a high school for the school year of nine months, beginning September 5, 1911, at a salary of $900 per annum, due and payable in ten equal instalments, one thereof at the end of each school month and the tenth at the end of the school year.   There are other allegations of the complaint as to the terms of the contract, etc., which will be presented later in this opinion upon new pleadings filed in the district court.

The defendant in the probate court specifically denied the material allegations of the complaint, except as to the election of the plaintiff as a teacher in its high school for the period stated in the complaint.   Judgment was rendered in the probate court in favor of the plaintiff for the sum of $292.50.   An appeal was taken to the district court.

In the district court an amended complaint was filed, and we shall state the new material allegations of the complaint, inasmuch as the action is based upon a contract which is specifically denied.   The complaint sets out fully the question of the execution of the contract and the carrying into effect of the terms contended for by the plaintiff.

Paragraph 1 states the organization of the respondent under the laws of the state.   Paragraph 2 alleges that plaintiff was the holder of a valid teacher's certificate entitling her to teach school in Bonner county.   Paragraph 3 alleges that on the 24th day of April, 1911, the defendant, through its board of trustees, duly elected the plaintiff as a teacher in its high school for the school year of nine months, beginning on or about September 5, 1911, at a salary of $900 per annum, the

same being payable in monthly instalments, and that it duly notified the plaintiff thereof; that thereafter and on or about the 20th day of June, 1911, the defendant requested the plaintiff either to accept or reject the employment of the defendant, pursuant to such election, and that upon such request being communicated to the plaintiff she accepted such employment and notified the defendant of such acceptance.

The complaint further states that the school year contemplated by said contract of employment began on or about September 5, 1911; that plaintiff was not here ready to begin said work under said contract because of the illness of her father and because the defendant excused her from beginning the performance of the contract and consented that she might be absent from her work for the period of one month after the beginning of the school year; that the defendant, when notified by plaintiff, about the last of August, 1911, that she could not be here at the opening of the school year to commence her work under the contract, did not require her to furnish a substitute during her absence but consented to such absence and undertook to find a substitute who could commence her work; that on the 24th of September, 1911, plaintiff arrived at Sandpoint prepared to perform the work according to the contract of employment, and she notified the defendant that she was ready to begin and carry on the work and offered to do so, but the defendant disregarded its contractual duties in that respect and terminated the employment and neglected and refused to permit the plaintiff to perform the contract, and that the plaintiff on the 25th day of September, 1911, and at all times since has been able and willing to perform the contract on her part, and has held herself in readiness to perform the same, and that the defendant waived performance by her prior to said time; by reason of said fact there became due the plaintiff on September 29, 1911, the sum of $25; and further alleges the amount due each month as specified, with interest, and prays judgment for $225 with interest.

The defendant filed an answer, and in the answer admits that on the 17th day of April, 1911, the defendant through

its board of trustees elected plaintiff as a teacher in its high school for the period named in the complaint, and that it duly notified the plaintiff thereof, subject to the terms of a written offer in the manner hereafter set forth, and not otherwise, to wit, by delivering to the plaintiff the following written and authorized notice thereof in substantially the following form:

"INDEPENDENT SCHOOL DISTRICT NO. 1.

"County of Bonner, State of Idaho.

"Sandpoint, Idaho, April 24, 1911.

"Miss Della Hermann.

"You are hereby notified that you have been elected a teacher in the Public Schools of Independent District No. 1, county and state aforesaid, for the ensuing year, subject to assignment by the Superintendent and the rules and regulations of the Board of Directors, at a salary of Nine Hundred and no/100 Dollars payable in ten equal instalments; one at the end of each school month, except the tenth, which is payable at the end of the school year.

"A failure to sign and return this notice of election within ten days from receipt thereof will be considered a declination and the position declared vacant.

"No further contract will be required.

"Notice received and election accepted.

"R. H. DOE,
"Secretary Board of Directors.
"...................
"Teacher.

"Date.....................

"(Sign and return this copy.)"

Attached to said notice was a substantial copy to be kept and retained by plaintiff, the only difference in the same being that at the bottom thereof were written the words in parentheses: "(Retain this copy.)" The defendant also admits that on the 20th of June, 1911, the defendant requested the plaintiff to either accept or reject the employment of the defendant pursuant to such election, but denies that the plain-

tiff accepted such employment or notified defendant of such acceptance or ever signed or returned to defendant the notice of election delivered to her for that purpose for a period of more than ten days from the receipt thereof, or at all; that the plaintiff has wholly failed to accept the only contract offered to her by the defendant, and that she has never made or executed a contract with this defendant to perform the services.

The defendant also admits that the school year contemplated by the contract began on or about September 5, 1911, and that the plaintiff was not here ready to begin work under the contract or at all, and did not present herself for the performance thereof in any manner or at all, and that the defendant has no information or belief sufficient to answer, therefore denies that the absence of the plaintiff was because of the illness of her father, and denies that the absence of the plaintiff was because the defendant had excused her from beginning the performance of said contract on that date, or that the defendant in any manner excused her presence on that date or the performance of said contract, or that the plaintiff had any contract with the defendant whatever entitling her to teach in the schools of the defendant district, and denies that defendant consented that the plaintiff might be absent for the period of one month after the beginning of school, or for any period, or that plaintiff notified defendant about the last of August or at any time. Then follows a specific denial of every allegation in the complaint as to the excuse of the plaintiff and the assent of the defendant in her absence, or excusing the plaintiff from returning and performing her contract. The answer also denies that the plaintiff, on the 25th of September, 1911, or at all or any time since that time, has been ready or able or willing to perform said or other contract on her part, or has held herself in readiness to perform the same. The indebtedness is also denied.

As an affirmative defense it is alleged that if by reason of any of the facts set forth in the plaintiff's complaint, or the answer, or any other facts or reason, the plaintiff has a valid or any contract with defendant for employment, that she has

breached the same and failed to perform the same, and the defendant elected to consider the same broken for the failure of plaintiff to attend and teach school under said contract on the 4th or 5th of September, 1911, and did so notify the plaintiff and discharge her and release her from said pretended contract for the breach thereof, and did on the 11th of October release and discharge the plaintiff from any such contract.

Upon the issues a jury was called in the district court, and upon the conclusion of the evidence a motion was made for a nonsuit, which was heard by the trial court and sustained, and the court entered a judgment and decree that the action be nonsuited and that the plaintiff take nothing therein and that the defendant, Independent School District No. 1 of Bonner county, state of Idaho, a body corporate, recover costs amounting to $56.05. A motion for a new trial was made and denied. This appeal is from the order denying plaintiff's motion for a new trial and the whole thereof.

The answer in this case admits the election of the plaintiff as a high school teacher, as alleged in the complaint, and the other material allegations in the amended complaint are specifically denied.

The facts are as follows: The respondent is an independent school district organized under the laws of the state. The plaintiff was a school teacher and was elected as a teacher of Latin and German at a meeting of the board on April 24, 1911, and it is shown by the record that upon her election the board of directors notified the plaintiff by a written notice that she was elected as a teacher in the public schools of Independent School District No. 1, and in such notice the following language was used: "A failure to sign and return this notice of election within ten days from receipt thereof will be considered a declination and the position declared vacant. No further contract will be required. . . . . R. H. Doe, Secretary of the Board of Directors. . . . . Sign and return this copy."

The plaintiff testifies as follows:

"Q. Prior to going to Minneapolis, had you been notified of your re-election as a high school teacher in the defendant

district for the next year? A. Yes, some time in March, I think, or April. Q. By whom were you notified? A. The notice came from the clerk, Mr. Doe.''

This notice was never signed by the plaintiff, and she never returned it to the board or the clerk of the board as required, and there was no other contract made or entered into between the board and the plaintiff.

The plaintiff, after the school year closed, left Sandpoint and went to Minneapolis, her home. On August 27, 1911, the plaintiff addressed a letter to H. T. Irion at Sandpoint, who at that time was superintendent of the high school of the district, but was not a member of the school board. In that letter she said:

''I hardly know how to write what I have to say. I had intended to start back to Sandpoint this week but feel that I cannot leave here at present.

''The early part of the summer my father had an operation and we felt that he was improving then very slowly, but the last two or three days he is worse and I cannot leave while he is in this condition. I am so sorry, it is so near time for school to open. If it were possible to get a substitute for three or four weeks, I think by that time I might be able to come; that would probably be a difficult thing to do— in Sandpoint, at least. I know of no one who would substitute in these subjects, possibly you do.

''I would not blame you in the least for engaging another teacher if it seems best to you.

''I regret that I have to cause you this inconvenience, but I feel sure you will understand my position. I shall be anxious to hear what you may decide to do.

''Sincerely,

''J. ADELLA HERMANN.''

It may be stated here as a fact that the school term opened on September 5th, 1911, and this was known by the plaintiff, and that at the time the letter above was signed and sent to the superintendent the plaintiff had not signed or entered into any contract with the respondent district, and in her let-

ter she makes this statement: ''I would not blame you in the least for engaging another teacher if it seems best to you.''

The record also shows that the board did select another teacher on or about the commencement of the school year and the board did not recognize any contract between the board and the appellant.

It appears after this letter was written Irion consulted with Clerk Doe and one of the members of the teacher's committee, but not with any member of the school board, and after such consultation addressed a letter dated August 31st to the plaintiff and acknowledged her letter of the 27th and notified her that ''we can take care of the vacancy for a month or longer time if necessary.''

On September 11, 1911, the plaintiff wrote the superintendent a letter in which she expressed her appreciation of Irion's letter of August 31st, and notified Irion that she would leave September 22d. The board of trustees of the respondent district had a meeting on the 8th, 9th and 18th of September, 1911, and Superintendent Irion, who had· the correspondence with plaintiff, was present at the meeting on the 8th and 9th, but did not call the attention of the board to such correspondence. It appears from the evidence that the plaintiff's father died on September 5th, the date of opening the school, and such misfortune caused her to send the telegram of September 11th. Afterward on September 22d she left Minneapolis and arrived at Sandpoint September 24th, and on that day notified the superintendent that she was ready to go to work the next morning; she went to the high school building next morning and saw the superintendent and had a talk with him about taking up her work, and he said he was going to look into the matter and see about making a change, as it appeared that another teacher was employed for the position intended to be assigned to the plaintiff.

The plaintiff was also present at a meeting of the board of trustees on October 5th, and the trustees and Superintendent Irion, and a Mr. Asher were also present; during the meeting the plaintiff explained to the board all the circumstances

connected with the transaction between the plaintiff and the defendant.

The record shows that the plaintiff offered to prove by her own evidence the facts set forth in plaintiff's exhibit "I," such facts being a statement of what transpired at the board meeting above referred to, and to the offer to prove the facts therein set forth, objection was made, and the objection was sustained.

The statements contained in exhibit "I" are quite lengthy, the greater portion of which relate to matters wholly immaterial, and the statement, as a whole, is to the effect that she was present when the board met on October 5th, and that at such time the plaintiff stated to the members of the board that she was ready to begin and take up her work under the contract; that the chairman asked the plaintiff to tell the board what had taken place from the time of her election as teacher in the high school of the defendant district in April up to that time, and the plaintiff said: "That she had been elected teacher, had been notified of said election and talked with Irion the superintendent and the clerk about raising salary, etc." Then follows the sending of the telegram and the correspondence between her and Irion and the clerk, and she states that she came to Sandpoint on the 24th of September, and notified Irion that she was ready to begin work, and that she went to the high school building and told the superintendent that she was ready to work as a teacher, and that on September 24th, when the plaintiff first notified Irion that she was ready, he notified her that Clerk Doe himself had employed Nellie Regan to take the plaintiff's place in the high school, and that he had a right to direct where the teachers should work, and that he would arrange matters so that the plaintiff should have her place in the high school of the defendant district to which she had been elected; and on the morning of September 25th Irion stated to the plaintiff that it would take a little time to give her a place; that the statements in substance were made by plaintiff to the board of trustees of the district and they were in session on the evening of October 5th, and that at such time the plaintiff pre-

sented to them the correspondence heretofore referred to, and they were read and it was then stated by the members of the board in the presence and in the hearing of others that Superintendent Irion had authority to carry on the correspondence and that he did not exceed his authority, and that he had authority to make the statement to the plaintiff which she told the board Irion had made, and that Asher asked the board if Irion had the authority to write the letters and the board stated that Irion did have such authority. This is assigned as error.

Irion was examined and said that he was superintendent and that he had the correspondence referred to by plaintiff. He does not say, however, that the board authorized him to recognize any contract or make any contract with plaintiff, and that another teacher was employed and filled the position for which they elected the plaintiff.

Exhibit "I," to which exception was taken, practically states the facts as disclosed in the letters, and we are satisfied that the statement, if admitted, could not help the plaintiff's evidence in proving a contract made with the district, and that it does not prove a contract of employment made between the plaintiff and the district.

In the case of *Ewin v. Independent School Dist. No. 8,* 10 Ida. 102, 77 Pac. 222, this court had under consideration a case similar to the case now under consideration, and the court in that case construed the statute and held:

"Under section 84 of the same act, which empowers the board of trustees of an independent school district 'to employ or discharge teachers' without specifying any cause or requiring any notice to the teacher, such board has unlimited and unrestricted power to dismiss either with or without notice to the teacher, and the exercise of such discretion by the board is not subject to review or control by the courts."

While sec. 84, Laws of 1899, p. 105, is not in the exact language found in sec. 129 of chap. 159 of the act providing for a code of laws on education for the public schools of Idaho, approved March 7, 1911, yet the meaning and intent of the

legislature is the same both in paragraph 2 of sec. 129, Laws 1911, chap. 159, and sec. 84, Laws of 1899, p. 105.

Sec. 84 of the act of 1899, paragraph 2, reads: "To employ or discharge teachers, mechanics and laborers, and to fix, allow and order paid their salaries and compensation, and to determine the rates of tuition for nonresident pupils"; and paragraph 2, section 129 of chap. 159, Laws of 1911, p. 531, is as follows: "To employ or discharge teachers, mechanics and laborers, and to fix, allow and order paid their salaries and compensation, and to determine the rate of tuition for nonresident pupils, and to withhold the salary of a teacher when the county superintendent notifies the board that a teacher does not hold a valid certificate."

The fact that Irion, the superintendent, and Doe, the clerk of the board, carried on conversations with the plaintiff, and that correspondence by letters and telegram passed between these two employees of the district and the plaintiff, did in no way contradict the notice which was to be the contract between the district and the plaintiff, and could in no way excuse the plaintiff in the absence of authority from the board, and the plaintiff's refusal to sign such contract was voluntary on her part, and no reason whatever is given by the plaintiff why it was not done. Certainly it was a violation of the notice itself.

Even if it be admitted that the plaintiff accepted the employment in June, it was afterward terminated by the plaintiff herself, and also thereafter revoked by the employment of another teacher in her place; and it was incumbent upon her to prove a new contract made with the board or authorized and ratified by them. (9 Cyc. 283; 35 Cyc. 953.)

In 35 Cyc., p. 965, the author in discussing this question says: "The modification or rescission of a school district contract must ordinarily be made in the manner in which the execution of the contract must have been made, and notice of such modification or rescission must be given to the other party to the contract. When there is proper authority therefor, a school district contract may be modified or rescinded by the school board or officers acting within the limits of such

authority; but a member of a school board cannot change a contract by the board so as to bind it unless he has been so authorized by the board, or unless his action is approved by such board."

But notwithstanding this fact, under the statute the board had discretion to discharge the plaintiff at any time without notice and without investigation or consideration of any request of the plaintiff, and not having performed any services at all up to the time of discharge, she would not be entitled to recover in this action, and the trial court did not err in sustaining the motion for a nonsuit; neither did the trial court err in overruling the motion for a new trial.    The judgment is *affirmed*.    Costs awarded to respondent.

Ailshie, C. J., and Sullivan, J., concur.