224 P.2d 1080

HOVENDEN v. CLASS A SCHOOL DIST. NO. 411, TWIN FALLS COUNTY et al.

HOF v. HOVENDEN et al.

CLASS A SCHOOL DIST. NO. 411, TWIN FALLS COUNTY v. HOF.

Nos. 7684, 7685.

Supreme Court of Idaho.

Dec. 2, 1950.

Robert N. W. Balleisen, Twin Falls, for respondent Thomas R. Hovenden.

Parry, Keenan, Robertson & Daly, Twin Falls, for appellants.

James, Shaw & James, Gooding, for in-intervenor-respondent Mary Hof.

GIVENS, Chief Justice.

In Case No. 7684, respondent, a resident taxpayer of Class A School District No. 411, Twin Falls County, appellant being an Independent School District covering the City of Twin Falls, sought a declaratory judgment involving the precise question raised as a defense in Suit No. 7685, which was brought by the District to condemn certain designated real estate as a site for a new senior high school, playgrounds, athletic field, etc. The defendant in the second suit intervened in the first. By stipulation the testimony in No. 7685 was deemed the testimony in No. 7684.

The sole question involved in both appeals, consolidated for hearing herein, is whether or not the board of trustees of an independent school district has the right under Section 33-716 I.C. to select and purchase real property as a school site for a school building and erect a school building thereon; and/or move various classes and grades into such building, when completed, from other extant buildings then either abandoned or to accommodate other grades or classes; without an authorizing election by the residents of the district under Section 33-714 I.C., subdivisions 9a and 10.

The learned trial judge decided subdivisions 9a and 10 of Section 33-714 I.C. applied to the trustees of an independent school district and refused condemnation in the one instance and rendered a declaratory judgment in the other, to this effect:

" * * * that before any real property may be purchased by the defendant school district for the purpose stated in Paragraph VIII of the Stipulation of Agreed Facts, the following steps and actions must be taken: (a) The Board of Trustees of the defendant school district must select a site. (b) The site selected must be approved by the County Superintendent as to the educational and administrative features and by the County Board of Health as to the sanitation features. (c) An election must be held within the district, at which election the question to be submitted to the qualified voters is whether or not the Board of Trustees of the defendant school district should be authorized to change the place of teaching the Tenth, Eleventh and Twelfth grades of the present high school of the District from the place where the same are now taught to the particular and specifically described site previously selected by the Board of Trustees. (d) At such election two thirds of the qualified electors present and voting must vote in favor of so author-

izing the Board of Trustees of the defendant school district."

The cases have been exhaustively and respectively briefed and ably argued by eminent counsel for appellants, respondents, and intervenor.

The genesis of the present statutes is in Title III of the 1887 Revised Statutes; as to common school districts, Section 667 thereof, Fifth and Sixth:

"Fifth. They (trustees) have charge of all school property in their districts, and, as such Trustees, have power to receive in trust all real estate or other property conveyed to said school district, and to convey by deed, duly executed and delivered, all the estate or interest of their districts in any school house or site directed to be sold by any vote of their district, and all conveyances made to said Board must be made in their corporate names: To Trustees of School District, No. —— County —— Idaho Territory, and to their successors in office;

"Sixth. Said Trustees have further power when directed by a vote of their district to purchase, receive, hold, and convey real and personal property for school purposes, and to hold, purchase, hire, and repair school houses, and supply the same with necessary furniture in accordance with the provisions of this Title and to fix the location of school houses: Provided, that no Trustee shall be pecuniarily interested in any contract made by the Board of Trustees of which he is a member, and any contract made in violation of this section is null and void".

As to independent school districts, Section 730, Second: "Second. Take, hold, and convey such real and personal property only, as is needed for actual school purposes."

And Section 735:

"Fifth. To rent, repair and insure school houses and property, and preserve the same for the benefit of the schools of the District.

"Sixth. To build or remove school houses and buildings, and to purchase or sell school lots."

The Fifth Session of the State Legislature in 1899, without specific reference to the 1887 statutes, passed an act to establish and maintain a system of free schools wherein the above sections as to common schools were re-enacted without material change, Section 45, Chap. VI, p. 96. As to independent districts, Section 79, Second, and Section 84, Fifth and Sixth, pp. 104 and 106. They were thus carried into the 1909 Revised Codes as to common school districts, Section 625; independent school districts, Sections 652, Second, and 658, Fifth and Sixth.

The same provisions again appear in the 1911 Session Laws, Chapter 159, pp. 506, 507 and 529, 532.

Subdivision 5 of Section 33-716 I.C. first appears in Chapter 14, 1913 Session Laws, p. 53. Otherwise, so far as material here-

in, Section 33-716 I.C. remained the same in Chapter 159, 1913 Session Laws, pages 527, 528. The 1919 Compiled Statutes contained the same provision as to common school districts, Section 887, and as to independent school districts, Section 847, including the playground amendment of 1913 noted above. Chapter 215, 1921 Session Laws, Section 46 at page 447, contains as now separated and designated Subsections 9a and 10 of the present statutes, Section 33-714 I.C., and as to Section 33-716 I.C., added the preamble: "Sec. 47. * * In addition to and supplementary of the powers and duties prescribed in section 46, the Board of Trustees of Independent and joint independent districts shall have the power and it is their duty: * * *" immediately followed by subdivisions 1 and 2 as they now appear in Section 33-716 I.C.

Thus, from 1887 to the present time, it is conclusively patent (taking into consideration special charters granted certain independent school districts before Statehood and recognized as continuing over after the adoption of the Constitution) there have existed three main kinds or classifications of school districts furnishing education through the twelve grades, with some subclassifications not germane to the questions herein: the so-called common school district, the independent school district, and the specially chartered school districts. Howard v. Independent School Dist. No. 1, 17 Idaho 537, at page 541, 106 P. 692; The Report of the Idaho Education Survey Commission as submitted to the Governor of the State of Idaho as a public document by the Education Survey Commission, pages 51 and 52.

Respondents urge and the learned trial court adopted the view that subdivisions 9a and 10 of Section 33-714 I.C., by the initial words: "The board of trustees of all school districts in the state of Idaho * * *:" and the difference in the wording of 9a and 10, Section 33-714 I.C. and Section 33-716 I.C., make applicable the provisions of 9a and 10 to independent school districts, though they, in effect, concede that trustees of an independent school district may purchase or otherwise acquire sites for playgrounds and gymnasiums without an election, on the theory that subdivisions 9a and 10 make no mention of gymnasiums, playgrounds, etc.

First, while the words in the subdivisions, including Section 33-714, subd. 9a, I.C., involved are somewhat different, the subject matter is the same; namely, acquisition and abandonment of sites for school houses and consequent corollaries, change of classes, grades, etc. The purpose and intent of both statutes are clear and in general identical and the legislative intent thus shown is controlling. Wood v. Independent School Dist. No. 2, 21 Idaho 734, 124 P. 780; Rural High School Dist. No. 1 v. School Dist. No. 37, 32 Idaho 325, 182 P. 859. The striking difference is not what may be done, but how; namely, that an election is required to authorize common school districts, but not independent school district trustees to so act.

In the second place, to make Section 33-714 I.C. applicable to Section 33-716 I.C. in any particular ignores the preamble of Section 33-716 I.C., i. e., that an independent district, in addition to Section 33-714 I.C., has supplementary powers without discrimination or differentiation.

In the third place, no persuasive or compelling reason has been advanced why trustees of an independent district should select, build, or change a school building site only when authorized by an election and could do the same things as to playgrounds, etc., without an election. Generally speaking, certainly school buildings would be of primary importance as distinguished from playgrounds, gymnasiums, etc. Conceding the latter are most important and praiseworthy, at least they were not specifically authorized until 1913.

While there is nothing in the record to indicate the course of action of independent school districts and common school districts in this regard, the recognition that independent school districts and common school districts are differently empowered organizations has existed from territorial days, has been recognized by the Legislature and courts and substantially the same argument now advanced by respondents as making Section 33-714 I.C. applicable to independent school districts, was considered by this court and rejected—true, in connection with the discharging of a school teacher, but exactly the same principle and similar omissions were involved: "It will be seen from the foregoing that a board of trustees of an ordinary school district cannot discharge a teacher before the end of his term without giving him a reasonable hearing, and that such discharge, when made, must be founded upon a neglect of duty, or some cause that in the opinion of the board renders the services of the teacher unprofitable to the district. It will also be seen that, when the Legislature came to providing the powers and duties of a board of trustees for an independent district, they authorized them to 'discharge teachers,' and that such power and authority is not coupled with any limitation as to cause for such discharge or notice of hearing thereon. *Appellant urges that, since section 85 provides that 'all the provisions of this act providing for a public school system, wherein not contradictory to or inconsistent with the provisions of this chapter and which may be made applicable to the objects thereof, are adopted as a part of the law governing the establishment and management of independent school districts,'* the Legislature must be understood as having intended to read section 84 in connection with section 45, and thereby require all removals to be made for cause and upon reasonable notice. It seems to us, however, that such an interpretation and construction of these statutes is unauthorized. In fact, such a construction would do violence to the intent and purpose of the statute and the objects of the Legislature. It was clearly the intention of the Legislature to provide that no teacher of an ordinary

school district should be discharged prior to the end of his term, except for cause, and in no event without a hearing. An examination, however, of the subsequent portions of that act, and especially chapter 10, convinces us that the Legislature meant to, and did, give to independent school districts *much more ample and plenary powers upon every subject connected with the schools within such districts than they had granted or intended to grant to the ordinary school district.* Indeed, the object of converting a district into an independent district is to enlarge the powers and extend the privileges of the new district thus formed, in order to more thoroughly organize, establish, and maintain its public schools, and secure a higher degree of efficiency and discipline in the school work. It is significant to our minds that the Legislature, after having made these requirements as to the discharge of a teacher from a school of the ordinary district, immediately passed to the subject of independent school districts, and authorized the discharge of a teacher without attaching any requirements as to cause for discharge or notice of intention to do so. (Paraphrasing, we might say in reference thereto, as to elections, significantly did not require any election in independent school districts with reference to locating or building school houses.) Under the ordinary and generally accepted rules of construction, the Legislature, in the same act, having in one section provided that a set of trustees for one class of districts should not discharge a teacher except for cause after reasonable notice, and in a subsequent section providing that the board of trustees for another class of districts might discharge a teacher without limiting that discharge to any cause or requiring any notice, they must be deemed to have purposely omitted the cause and notice from the latter section. It was evidently the intention to authorize a board of trustees of an independent school district to discharge a teacher at will or pleasure." Ewin v. Independent School Dist. No. 8, 10 Idaho 102, at pages 110, 111, 77 P. 222, at page 224. (Emphasis added.)

The preeminence of counsel on both sides and the writer of the opinion and personnel of the Court stamp the case as a beacon of judicial acumen.

This principle was later expressed and emphasized as to the distinct rights (though not the particular ones involved herein) between common school and independent school districts: "Applying this rule to the act of March 11, 1893 (Laws of 1893, p. 187), and the act of March 7, 1911 (Laws of 1911, p. 483), it is apparent that the Legislature was intending by the provisions embodied in said acts to cover the entire subject of organization, government, and regulation of the common schools of Idaho, and that in such acts a classification is made of school districts, and that this classification is made by the provisions of article 5 (common schools) and article 13 (independent school districts) of the act

of 1911; and that in making this classification the manner of organization of each class of school districts is specially provided for in each separate article, and that, in so far as the organization and government of said districts [is concerned], it was the intention of the Legislature to provide separately and distinctly for each in the respective articles, and that the provisions of article 5 in no way apply to or govern the provisions of article 13 as to the organization of independent school districts." Wood v. Independent School Dist. No. 2, 21 Idaho 734, at pages 740-741, 124 P. 780, at page 783.

True, Ewin v. Independent School Dist. No. 8, supra, was decided prior to the time the preamble to Section 33-716 I.C. was added in 1921, but the addition of this preamble merely emphasizes and bolsters the principle announced in the case; namely, that independent districts are given different powers and operate under different requirements from common school districts.

The conclusion, therefore, is unescapable that Section 33-714 I.C. does not apply to independent districts and under Section 33-716 I.C., the trustees of an independent or joint independent school district have the power sought by appellants herein to purchase and acquire sites for school buildings of any and all types and erect buildings thereon and change the attendance of pupils by grades or classes from one building to another and sell or otherwise dispose of such sites and buildings without an election.

The decrees in both suits are, therefore, reversed and the causes remanded with directions to enter the appropriate declaratory judgment in favor of appellants in Suit No. 7684; to reverse the judgment of nonsuit in case No. 7685, and to permit the action for condemnation to proceed in accordance with the views herein expressed.

In case No. 7684, costs to appellants. In case No. 7685, costs to respondent. State ex rel. McKelvey v. Styner, 57 Idaho 144, at page 148, 63 P.2d 152.

TAYLOR and KEETON, JJ., and WINSTEAD and McDOUGALL, District Judges, concur.